**WINSLOW ENGINEERING COMPANY, Appellant,**

v.

**Leroy R. SMITH, an individual, doing business as Rol-Pak Co., Appellee.**

No. 13551.

United States Court of Appeals Ninth Circuit.

June 13, 1955.

Rehearing Granted Sept. 20, 1955.

A. Donham Owen, San Francisco, Cal., Mason & Graham, Los Angeles, Cal., for appellant.

Lyon & Lyon, Reginald E. Caughey, Los Angeles, Cal., for appellee.

Before DENMAN, Chief Judge, POPE, Circuit Judge, and BYRNE, District Judge.

POPE, Circuit Judge.

The appellant as plaintiff below brought this action charging appellee-defendant with infringement of its Winslow & Moore Patent No. 2,345,849. The court below held the patent void for want of invention. Upon this appeal appellant assigns error in respect to the finding of want of invention and appellee asserts that the judgment must be affirmed not only for want of invention but for other reasons including the insufficiency of the claims. The patent, for a "lubricant purifier" discloses a replaceable filter element designed to filter lubricating oil or oil used for fuel in connection with engines and other machinery. Oil such as that used as a lubricant in an ordinary internal combustion engine tends to pick up and accumulate dust, dirt, and other solid matter and as these foreign particles increase, the lubricating quality of the oil diminishes which tends to shorten the life of the moving parts of the engine it is designed to protect. This necessitates changing the oil after it has thus deteriorated. In order to extend the useful life of such oils filters have heretofore been designed for the purpose of separating and filtering out impurities from engine lubricating oil. Most of these have utilized filter elements which may be used to replace those originally provided and which are required to be removed as they cease to function.

One of the problems confronting those who made and used these filters was their tendency to clog or fill up within a limited time, and thus require frequent replacement. This was because the particles carried in the oil and which were required to be filtered out would be deposited on the outside surface of the filter and within a comparatively short time all of the pores through which the oil was to be filtered would be closed off, and the filter surface would then "slick over". This was found to be true without regard to whether the filter proper, that is to say, the part which carried the openings or pores through which the oil was required to pass, were made of cloth, metal or other material.

In the Winslow & Moore patent, the asserted inventors undertook to bring together a combination of old parts but in such manner as to provide a filter ele-

ment which would extend the life of the oil filter and postpone the time when the pores in the filter surface would slick over until the absorbent filtering material behind the filter surface had been completely filled with this foreign matter and the material which absorbed the impurities had been utilized to the maximum extent possible.

The Winslow filter element consists of four parts. It is cylindrical in shape and extending from end to end through the center of the element is a perforated hollow rigid core member. Next to this rigid hollow core is a compacted mass of what is described as "suitable filtering material", "preferably a mixture of cotton waste and wood shavings". This in turn is encased within a porous knitted sleeve of fabric and this knitted fabric is then drawn around the end of the cylindrical mass and fastened or secured to the rigid core by circular plugs. These plugs telescope with a tight friction fit into each end of the core.

When such a replaceable filter element is set in a surrounding filter shell in such manner that the oil to be filtered will flow from the exterior of the cylindrical element toward the center and out through the perforated center core member, it is shown to have this effect: The impurities and foreign matters in the oil pass into the filtering material which is full of voids or interstices in which these impurities lodge; as they continue to do so, and the filtering mass becomes more and more filled with these deposits of solid matters, it begins to expand and this in turn forces outward the knitted sleeve casing which surrounds the whole. As the casing is knitted and not woven, and functions like all knitted material, its openings gradually become larger permitting more and more of the solids in the oil to pass through and lodge in the interior filter mass and further fill up its voids or interstices. As this mass continues to expand in this manner it stretches the knitted cover and thus postpones the natural operation of plug-

ging up its pores, and this process continues until such time as the interior filter mass has no more interstices in which solid particles can lodge. At that stage it ceases to grow; the knitted cover is no longer stretched, and its pores then become like the pores in other woven material and are slicked over and the filter element must be replaced.

It is this growing action here described which appellant asserts demonstrates invention and the validity of his patent. The trial court found against the appellant upon the sole ground that the patent was invalid because of want of invention; the court finding that "the plaintiff has failed to meet the test of invention applied to combination claims as set forth by the Supreme Court in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147 [71 S.Ct. 127], 95 L.Ed. 162, 167, in that the patentee of the patent in suit has merely brought together elements, each of which is well known in the prior art, which in combination do not perform any additional or different function in the combination than they individually performed out of the combination." These findings followed an opinion in which the trial court said: "We are of the opinion that the combination of the elements well known in the art, however useful it may be, does not reveal 'the flash of creative genius' required to justify a patent."

■■■ If the judgment were required to be sustained upon this finding we would feel compelled to reverse, for we think the finding was clearly erroneous. No doubt the court was mistakenly led into a misunderstanding of the meaning of the phrase " 'flash of creative genius' " as that expression has been used by the Supreme Court.[1] As we have previously indicated, Winslow concedes that each of the four parts listed in its claims is old. A large number of prior art patents were produced and put in evidence on behalf of the defendant in an effort to show anticipation of the

1. See Pacific Contact Laboratories v. Solex Laboratories, 9 Cir., 209 F.2d 529, 533.

claimed combination invention here. In general these disclose no more than plaintiff concedes, namely, individual items used to make up the Winslow combination may be found in various of these examples of the prior art. Thus there were earlier filters through which the oil flowed from the outside to the inside; there were patented replaceable filter elements in certain designated patents; in others hollow perforated cores were used; in others compacted filter masses were employed. In others, tubular or cylindrical casings or covers were used; in some, rings were used to hold the filter cloth to a core, and in some the outer casing was composed of a porous knitted fabric. It does not appear that any of the prior art utilized or comprehended the unique combination present in the Winslow device. This combination presented a growth factor accompanied and supplemented by the expanding of openings in a filter cloth to allow that growth to continue and to prevent slicking over until maximum utilization of the interior filter mass had been accomplished. Hence we think invention was here present. It would serve no useful purpose to expand this opinion by including an item by item description of the prior art patents upon which the defendant relied in an effort to show anticipation. We have examined the ones relied upon, and we find such anticipation wanting.[2]

2. To illustrate, defendant says that the so-called FitzGerald and Krause patents describe filtering material or masses having elasticity and capability for expansion. Neither contains any teaching suggestive of the Winslow patent. FitzGerald has no knitted fabric but it does have a bag of ordinary woven cloth or fabric; suspended in the bag is a core; the bag is loosely filled with a filter mass. The principle of its operation is disclosed to be that when oil is introduced under pressure in this loosely filled mass, the pressure would create an internal movement which would keep rearranging the particles of the bag contents so as to prevent their clogging. The Krause patent discloses a bag made of turkish toweling and lacks any suggestion of expandable fabric. The woven bags filled with sponge or other compressible filtering material are suspended within the filter so that after the filter element has absorbed a quantity of grease and oil they can be wrung out by turning a crank which squeezes oil and grease from the filter bags. There is no suggestion in it of expanding material or of growth or of expanding pores. It was considered by the patent office before granting the Winslow patent.

The Kneuper patent has a central core. In its operation the oil would enter the perforated tube or core and flow toward the outside of the filter. The filter material surrounds this core and after the fluid passes through the filter material, it goes out through a wire screen which surrounds the whole. The wire screen is made of woven wire mesh and it is held in place around the filtering material by shoe string lacing. The purpose of the lacing, which permits of some stretching, is stated as follows: "By having the ends of the jacket D placed together as shown, this jacket gives somewhat as the filtering material expands and thus prevents an undue compression of the fibers of the filtering material." There is no suggestion in this patent with its one wire mesh, of the idea which Winslow incorporated of opening pores in the knitted cover nor of the interaction of enlarging pores and an expansion of the filtering material limited only by the capacity of the material itself.

The De Luxe Hurn patent utilized a cone shaped metal core extending partway from the bottom toward the top of the element and this was surrounded by a filter mass through which the oil would flow from the bottom to the top of the unit. The whole was encased in a knitted cover. It is noted that while the reference is to the knitted cover, yet the filter material rests upon a solid metal base, and if there were any growth action from the expansion of the filter mass it would have to be in a direction from which the oil flowed and the solid base shows that there was no conception of such an expansion. The use of a knitted cover therefore has no relation to the concept of a growing or expanding filter mass. The patent further discloses that the filter element is designed to fit tightly within a metal container, which further negatives the notion of expected expansion.

This is also true of the Von Pentz patent, which mentions "woven or knitted material", but which is so constructed as to forbid any growth action.

It is to be noted that in the combination described by Winslow, each of the four elements performs a substantial and necessary function in bringing about the new results. The central metal perforated core furnishes a solid backing for the filter material or mass so that the growth and expansion will have to be outward. The filter material itself through the process of gradual accumulation of the filtered particles in its interstices then pushes toward the outside, the direction from which the oil is flowing. This movement or push operates to stretch the knitted fabric, a result not possible with woven cloth, woven wire or other filtering material. And this opening up of the pores in the knitted fabric happens because the fabric is held firmly in place at both ends of the element where it is tucked into the ends of the central core and thus the necessary tautness is supplied.

Thus we have invention,—for the whole of what Winslow has produced exceeds the sum of its parts. It measures up to the standards for invention which this court has previously had occasion to approve in Pointer v. Six Wheel Corp., 9 Cir., 177 F.2d 153; Refrigeration Engineering, Inc. v. York Corp., 9 Cir., 168 F.2d 896; and in Oxnard Canners, Inc. v. Bradley, 9 Cir., 194 F.2d 655. The court's reference to "the flash of creative genius" obviously was to the use of that expression in Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 91, 62 S.Ct. 37, 41, 86 L.Ed. 58. In Pacific Contact Laboratories v. Solex Laboratories, supra, note 1, this court had occasion to comment upon that phrase which has had a tendency in some instances to cause difficulty for both lawyers and courts. It is sufficient for our purposes now to state that we re-affirm what was said in that case with respect to the proper use of that phrase.

We have gone thus at length into those features which went to make up Winslow's asserted invention because an understanding thereof is necessary in order to consider the next question,—whether in applying for the patent Winslow stated its claims as required by the applicable statute.

Prior to January 1, 1953, the requirements in this regard were stated in Title 35 U.S.C.A. § 33, which provided that the inventor "shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery."[3]

The difficulty which the appellant here confronts relates to the statement of its claims which were three in number. Claim 1 is representative and reads as follows: "1. An oil conditioner element comprising a cylindrical body with a central, cylindrical, hollow, rigid, perforate core, a tubular fabric casing having its ends secured to corresponding ends of the core, the ends of the fabric casing passing over the respective ends of the core, the means for securing said ends of the tubular fabric comprising plugs for frictionally holding the fabric against the interior of the core, and a compacted mass of filtering material within the space enclosed between the casing and core, at least one of said plugs being hollow to afford communication with the interior of the core." It will be noted that there is no reference in this claim to any part or feature suggestive of the growth factor to which we have previously referred and about which Winslow undertook to build its invention. The claim does not allude to the growth or expansion of the filtering

3. The Act of July 19, 1952, c. 950, 66 Stat. 792, effective Jan. 1, 1953, provided in § 4(a) that the new Act "shall apply to unexpired patents granted prior to such date except as otherwise provided." It does not appear that the new Act makes any substantial change in respect to the requirements of the application for patent. Title 35 § 112 provides among other things: "The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."

material; nor is there any allusion to any knitted fabric, the reference being to a "tubular fabric casing".[4] Appellant concedes that an ordinary woven fabric, not knitted, would not infringe its patent.[5] It is apparent that the language quoted above from Claim 1 would be equally descriptive of filters conforming to the prior art.

The appellant says that notwithstanding this condition of the statements of its claims, they must be read as incorporating the real invention as found in the specification and drawings. It says: "The specification may be referred to in order to limit the claim".[6]

It is true that the specifications when read with the drawings, if added to or incorporated in these claims would accomplish the required limitation necessary to specify the combination constituting the invention. The description in the specifications clearly refers to "a porous knitted sleeve of fabric", and in describing the element states that it is "flexible and normally grows in volume as deleterious substances are collected and absorbed within the body of the element". It refers to the growing action which "naturally opens up the porosity on the exterior surface which not only prevents clogging of the outside surface but almost continuously presents new exposed surfaces of the unused chemically treated purifying materials within the body of the element itself."

■ We think, however, that Graver Tank & Mfg. Co. v. Linde Air Products Co., 336 U.S. 271, 277, 69 S.Ct. 535, 538, 93 L.Ed. 672, compels us to hold that these claims are invalid. In that case the district court had held that certain of the claims were too broad and comprehended more than the invention. The court of appeals disagreed holding that the claims should be held to be limited to certain items named in the specifications and said that the district court should have construed the claims: "as thus narrowed and limited by the specifications." The Supreme Court said, 336 U.S. at page 277, 69 S.Ct. at page 538: "The statute makes provision for specification separately from the claims and requires that the latter 'shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery.' R.S. § 4888, as amended, 35 U.S.C. § 33, 35 U.S.C.A. § 33. It would accomplish little to require that claims be separately written if they are not to be separately read. While vain repetition is no more to be encouraged in patents than in other documents, and claims like other statements may incorporate other matter by reference, their text must be sufficient to 'particularly point out and distinctly claim' an identifiable invention or discovery. We have frequently held that it is the claim which measures the grant to the patentee. * * * While the cases more often have dealt with efforts to resort to specifications to expand claims, it is clear that the latter fail equally to perform their function as a measure of the grant when they overclaim the invention. When they do so to the point of invalidity and are free from ambiguity which might justify resort to the specifications, we agree with

4. Claim 3 refers to "an outer pervious casing member".

5. Says appellant's brief: "A significant point is that defendant can avoid infringement of this patent this very day by one simple change and still keep the knitted outer sock to dress up his filter element. * * * All defendant has to do is to go back to a woven fabric like he used before."

6. Appellant takes the quoted language from Walker on Patents, Deller Ed. p.

1242. It also cites on this proposition Payne Furnace & Supply Co. v. Williams Wallace Co., 9 Cir., 117 F.2d 823; Smith v. Snow, 294 U.S. 1, 55 S.Ct. 279, 79 L. Ed. 721; Schnitzer v. California Corrugated Culvert Co., 9 Cir., 140 F.2d 275, 276. It is noted that Mr. Deller's 1954 supplement to this reference, although citing Linde Air Products Co. v. Graver Tank & Mfg. Co., 7 Cir., 167 F.2d 531, fails to note Graver Tank & Mfg. Co. v. Linde, infra, which reversed it.

444

the District Court that they are not to be saved because the latter are less inclusive."

We are unable to note here any ambiguity in the claims in question. Hence, in this respect, we find ourselves in the position of the Court of Appeals of the Seventh Circuit in Borg-Warner Corp. v. Mall Tool Co., 217 F.2d 850, 856. There the court, which had been reversed in the Graver Tank & Mfg. Co. case, supra, noting that there was no ambiguity in the claims there in question, said that "to limit those words * * * by reference to the specifications seems to us to go beyond what we are permitted to do under the Supreme Court's decision in the Graver case."

In Payne Furnace & Supply Co. v. Williams-Wallace Co., supra [117 F.2d 828], in suggesting that "the drawings and specifications elucidate the claims", and that certain limitations were "implicit in the spirit of the invention claimed", we commented upon the desirability of not striking down "a meritorious invention." In view of the decision in the Graver case, we do not feel that we can do here what we did in the Payne Furnace case, regardless of the meritorious character of the Winslow invention.

■ We hold therefore that the appellant's claims are invalid for failure to "particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery", or, as the new statute puts it, it has failed to conclude with claims "particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."

For this reason the judgment is affirmed.