**BEATTY SAFWAY SCAFFOLD CO.,**
Appellant,

v.

**UP–RIGHT, INC., a Corporation,**
Appellee.

No. 16490.

United States Court of Appeals
Ninth Circuit.

July 25, 1962.

Rehearing Denied Aug. 24, 1962.

Henry Gifford Hardy and Lawrence H. Stotter, San Francisco, Cal., for appellant.

Keane & Haessler, and Gordon H. Keane, Portland, Or., Mellin, Hanscom & Hursh and Oscar A. Mellin, San Francisco, Cal., for appellee.

Before HAMLEY and KOELSCH, Circuit Judges, and BOWEN, District Judge.

PER CURIAM.

This is a patent infringement case in which a jury returned a verdict in favor of the appellee and against appellant, respectively plaintiff and defendant in the Trial Court, for infringement of appellee's patented device by appellant's accused device, and for damages incident to the infringement. Appellant timely moved for a directed verdict and for judgment n. o. v. or for a new trial and to alter or amend the judgment entered on the verdict, which motions were denied, and this appeal followed. The Trial Court had and this Court has jurisdiction. 28 U.S.C. §§ 1338 and 1291.

Appellee's device in question is a portable and collapsible scaffold patented under letters patent 2,438,173 on March 23, 1948. Appellee's basic structure under the patent is a stand made of an aluminum alloy. It is supported on either end by two sets of poles upon which a platform rests. A ladder which is also a support runs diagonally from a position on the bottom frame bar between the bottom ends of one set of poles to the top of the other set. Due to permanent and detachable hinges, the ladder and two sets of poles may be rotated in such a way as to collapse or erect the scaffold with relative ease, and allowing its transportation or storage in its collapsed condition without taking up much room.

The accused scaffold is almost identical with appellee's scaffold. The only difference is in the location of the hinges, which results in collapsing and folding the accused scaffold in a somewhat different way. It has not been alleged or shown that the appellant's accused scaffold is in any way an improvement over appellee's, but merely that it operates somewhat differently.

The appeal presents several questions.

JURISDICTION. At the trial the Court became convinced that the interest of Wallace J. S. Johnson had been transferred, and dismissed the original patentee Johnson as a party plaintiff. On this appeal now for the first time appellant contends that after Johnson's dismissal, the Trial Court did not have and this Court does not have jurisdiction of the action because, appellant says, appellee did not prove its title and Johnson was and is a necessary party. Such jurisdictional objection, as to timeliness, can as appellant asserts be made at any stage of the proceedings in either Court, provided the objection is based upon sufficient grounds.

That jurisdictional objection includes the more specific contention that the Trial Court did not by specific order expressly admit in evidence as an exhibit the assignment (Ex. 1-B) from Johnson to appellee, and that without that exhibit the Court was deprived of necessary evidence of appellee's title. Attached to appellee's brief is an affidavit by the District Court deputy clerk containing an *unofficial list* of documents received in evidence including this Exhibit 1-B. But, as appellant says, the record does not show any specific order by the Trial Judge expressly admitting in evidence that Exhibit 1-B. We do not decide whether or not that affidavit and its stated facts are alone sufficient to reflect the proper admission of such assignment in evidence because our decision if favorable to appellant would not dispose of the matter. There yet remains to be considered important additional evidence supporting appellee's right to sue.

Of interest here is the landmark case of Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923, holding that any "assignment" or transfer which is short of granting the "exclusive right to make, use and vend" the invention in the United States is merely a license which does not permit the licensee to sue in his own name. Thus, the exact nature of the transfer and the rights which it conveys must be closely scrutinized.

In connection with its consideration of the deletion of Johnson as a party plaintiff, the Trial Court asked appellant's counsel if he had any objection, and stated "he (Johnson) claims he has transferred *all of his interest* to the corporation" (parentheses and emphasis added). Counsel for appellant in part replied "My only objection, your Honor, is that it comes at a very late time * * * I am only interested in the right thing to do, and I have no objection". This would clearly indicate that appellant then recognized the existence of the assignment from Johnson to appellee, and that appellant waived its right to object for lack of such jurisdiction. Thereupon the Court ordered deletion of Johnson's name as party plaintiff, without objection from either party.

The information contained in Johnson's own claim above mentioned is that Johnson personally claimed that as a fact he had transferred all of his interest in the patent to appellee. Appellee's attorney stated at the trial that "We labeled that patent as 1, and 1-A and 1-B are the two assignments we located Sunday, and they are before your Honor, *showing title in the plaintiff*" (emphasis added). To those statements at the trial appellant's attorney made no objection.

After discussing appellee's exhibits near the close of plaintiff's case in chief, appellant's counsel informed the Court that he did not wish to exercise his reserved right to cross-examine Mr. Johnson further regarding exhibits, and returned the exhibits including the assignment from Johnson to the appellee corporation after appellant's counsel had had those exhibits in his possession for study overnight.

Respecting appellant's waiver during the trial of objection to appellee's title and right to sue, and not as proof of untimeliness of appellant's jurisdictional objection, the circumstances referred to in the next two paragraphs are very significant and important.

In its motions for directed verdict at the close of appellee's case in chief and again upon the close of all the evidence, appellant based those motions only upon alleged invalidity and noninfringement of appellee's patent and lack of proof of damages. Appellant did not at those times, nor at any time during the trial nor until this appeal, object to the Trial Court's jurisdiction, nor object that appellee did not establish its right to sue, nor did appellant during the trial dispute the fact that *all* of Johnson's interest had been assigned to appellee.

Finally, standing above and controlling all other related evidence is the agreed fact of the pre-trial order which states that appellee is the "exclusive licensee" of the patent.

From all of the foregoing it must be concluded that appellee received from Johnson the exclusive right "to make, use and vend" the appellee's patented scaffold in the United States, and that appellee may sue in its own name for enforcement of its rights under that patent. These facts amply meet the test laid down in Waterman, supra. We accordingly hold that appellant's objection to jurisdiction is not well taken.

*VALIDITY OF PATENT.* Appellant contends that the normal presumption of patent validity, with the burden of proving invalidity resting upon the one asserting it, as provided in 35 U.S.C.A. § 282, does not apply where the Patent Office at the time the patent was issued did not have knowledge of prior patents of the prior art. In this case, the Patent Office when appellee's patent was issued did not have before it knowledge of the Martin patent 1,912,947, calling for an allegedly similar scaffold to the one in issue.

■ Appellant's contention appears to misconstrue the presumption involved. The rule is that the presumption always applies, but when it is shown that the Patent Office did not have prior patents before it, such patents may rebut the presumption of validity. This depends, of course, upon whether the undisclosed prior patents are substantially the same as the later patent in question. Thus, at the outset the presumption is still applicable. It remains to be seen whether that presumption has been rebutted by an un-

disclosed and significant prior patent. We think as indicated by the Trial Court that consideration of the illustrative drawings of the Martin patent should leave any one unconvinced of substantial similarity of the Martin patent with appellee's patent.

Appellant contends that the description contained in Claim 1 of appellee's patent is invalid because it omits an essential element which is required for the scaffold to operate. The omission is of a bar which is not a fixed part of the scaffold, but is attached after the scaffold is assembled between the two sets of vertical poles supporting the platform. This bar is used for additional support and prevents the scaffold from collapsing while in use.

Against that contention appellee urges that the essential structure patented here is a collapsible or folding scaffold, and that it is this precise foldability that is a basic claim of the patent. Viewed as such, the brace omitted in Claim 1 would not be essential because it has nothing to do with the easy erection or foldability of the scaffold, but only supports it while in use. On the other hand, the scaffold, once erected, could not be used without the omitted brace, and therefore the brace is an essential part of Claim 1 respecting operability of the patented device as a usable scaffold, as appellant asserts.

■ Appellee contends, however, that in such a situation resort may be had to the specifications contained in the patent which clearly describe the brace in question. However, Graver Tank, etc. v. Linde Air Products, 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672, held that if the claim is *un*ambiguous, the specifications cannot be resorted to to save the patent. This ruling has been followed by this Court in Winslow Engineering, etc. v. Smith, 9 Cir., 223 F.2d 438. But the usual situation in which this rule is applied is where the claim is invalid because of overclaiming, so that specifications cannot be used to make them less inclusive. There is good reason for not applying that rule here, and we do not do so, because the claim is *under*-inclusive, and therefore ambiguous, requiring a look at the specifications to explain the gap or to fill in the details. That conclusion is, where ambiguity exists, permissible if not implied in the following excerpt from Graver Tank, supra, quoted in Winslow, supra, at pages 443–444 of 223 F.2d: " * * * *When they* (the cases) do so (involve overclaims) to the point of invalidity and *are free from ambiguity which might justify resort to the specifications,* we agree with the District Court that they are not to be saved because the latter are less inclusive." (parentheses and emphasis added).

Further, as a practical matter this discussion as to the Claim 1 omission is somewhat academic because even if Claim 1 is held invalid, Claim 2 is identical except that it includes a description of the brace omitted in Claim 1, and, if there is infringement, it would operate against Claim 2 of appellee's patent and require an affirmance of the jury's verdict.

Appellant contends that the same basic structure patented by appellee existed in the prior art, and that since appellee's patent does not add anything new to the prior art, it is invalid as to both Claims 1 and 2.

■ Whether appellee's device comprises a patentable improvement over the prior art is ultimately a question of law based upon the rule that "The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention." Lincoln Engineering Co., etc. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008. But where there is substantial evidence of uniting old art parts or elements in such manner that they form or produce a new function or operation, the question of fact as to whether they do so or not may upon such evidence be submitted to the jury, as was properly done in this case. Moist Cold Refrigerator Co. v. Lou Johnson Co., (9 Cir., 1957) 249

F.2d 246, 255, cert. den. 356 U.S. 968, 78 S.Ct. 1008, 2 L.Ed.2d 1074. There this Court ruled that "Again, whether the claims of the patent in suit were sufficiently definite to satisfy the statutory requirement as to particularity is a question of fact, decided by the jury in appellant's favor by its answer to the special interrogatories, * * *. We believe the presumption of validity, arising from the issuance of the patent, plus the expert testimony introduced, is sufficient to make this a question for the jury to determine". Very similar to that just quoted is the factual situation here.

Appellant contends that if the real invention here is foldability of the scaffold, then appellee has not complied with 35 U.S.C. § 112 (old § 33, R.S. § 4888 in effect when appellee's patent issued), which requires that the inventor "point out and distinctly claim the part, improvement or combination which he claims as his invention or discovery". Appellee's Claims 1 and 2 do not expressly claim foldability, but with the specifications and drawings do explain how the integral parts of the scaffold are "hingeably" connected or detachably connected. Appellant urges that respecting foldability of the scaffold it is necessary to have a particular type of offset hinged connection, as well as certain proportions between the various elements of the scaffold, in order to achieve the desired result.

On that point appellant's contention essentially is that Claims 1 and 2 are inoperative without a more detailed description of the type of hinges required to effect the proper folding of the scaffold. It would appear necessary for appellee to particularly describe the type of hinged connection in order to claim "a hinge".

Appellant charges appellee with overclaiming, and urges that by claiming only a "hinged connection" appellee has attempted to claim all hinges when in fact only specific hinges will accomplish the desired result. The drawings in the patent indicate that the three horizontal bars supporting the platform are connected on one side on top of the trunnions, while on the other they are connected underneath the trunnions. This difference on either side is referred to as an "offset hinge", which allows the scaffold to fold in the manner required.

Appellee contends and we agree that the term "hinged connection" can be easily explained by referring to the drawings and specifications wherein the type of hinge is explained, and for that reason we think appellee has sufficiently claimed the hinges and other components necessary to accomplish the improved foldability of appellee's device, as in effect the jury found.

In this case in returning its verdict, the jury was required to answer the interrogatory, "Do the individual elements in the claims when joined together produce a new, improved and additional result" and answered: "Yes". We think there is ample evidence in this case to support that special verdict of the jury.

The patent in the prior art closest to this one is the Martin patent. A brief comparison of the two indicates that the Martin patent is much more cumbersome and would not be as easily adaptable to the quick tower construction for which appellee's structure was partially designed. The ladders in the Martin patent are at each end of the platform, while in appellee's patent they are secured safely and diagonally between the end poles. Though the same result is accomplished, i. e., a foldable scaffold, appellee's device greatly improves and adds to the Martin device, and for that reason provides a patentable improvement over the prior art, in harmony with the jury's general and special verdicts.

While it is true in this case that appellee's invention incorporates many of the elements contained in the prior art, it is also true that they are first, combined in such a way as to function differently, and second, supplemented by the addition of hinged connections which enable the scaffold to be erected and folded quickly. Each individual scaffold unit under appellee's patent can be attached

on top of another unit with relatively great speed, and there is evidence in the record that appellee constructed a 204-foot tower in eight hours. In addition to witness Johnson's testimony, also in this record is the highly persuasive testimony of the appellant's own expert witness that in appellee's patented device "There very definitely was an advance \* \* \*" over the prior art. We hold that appellee's patent is valid as against appellant's attack.

*INFRINGEMENT.* Appellant contends that there is no literal infringement here and that the doctrine of equivalents is not available, for one reason because Johnson admitted that the allegedly similar connections were not equivalent connections. Johnson was not the appellee but made that admission as a witness.

Mr. Justice Jackson stated in Graver, supra, that there rarely is a literal infringement; and there is not literal infringement here because the hinged connections are in different locations on the two scaffolds and the detachable connections are on different elements.

As to infringement of appellee's patented scaffold by the accused scaffold, the real question is whether the doctrine of equivalents applies. The essence of appellee's claim to accomplish foldability is that there be two hinged connections; then the other parts of the scaffold can be rotated about the connections to accomplish the folding. In appellee's structure, the two hinged connections are on the upper portion of the two supporting poles; the detachable connection is on the lower portion of the ladder. In appellant's structure, the hinged connections are on either end of the diagonal ladder, so that one is on top of a supporting pole, the other on the bottom of the opposite supporting pole; the detachable connection is on the upper portion of the other supporting pole opposite the hinged connection. It can be seen from this that appellant has merely shifted the same basic connections to different locations, but in such a way as to accomplish the same result. It is true that the folding of appellant's device is accomplished somewhat differently, yet the basic "foldability" is still accomplished by the necessity of two hinged and one detachable connections.

This seems to be a perfect case for application of the equivalents doctrine which, among prohibited infringers, includes devices substantially similar to the patented device. We think as did the jury that the accused device of appellant infringes appellee's patented device.

*INSTRUCTIONS.* Appellant next contends that the Court erred in failing to give two of its requested instructions. The first of such requests is that, in effect, if appellee's patent claims hinged connections generally, and a special kind of hinge is necessary, the claim would be invalid. This same basic instruction was in substance given to the jury many times during the course of the Court's instructions. The Court, in effect, instructed the jury to examine the claims and determine whether one skilled in the art could determine whether the "hinged connections" were sufficiently descriptive of the hinges necessary to accomplish foldability, that they could look at the specifications and drawings, not to expand or limit the claims, but to explain them, and that if they found that all hinges were claimed, the patent was invalid, but if limited to a particular type of hinge, it was valid.

Appellant's second requested instruction, not given by the Court, is that, in effect, if appellee overclaimed all types of hinges, some of which will and some will not accomplish the intended result, and if a specific type of hinged connection was found to be required, then it has abandoned any special hinging in the invention and dedicated such hinging to the public. It does not appear from the instructions that the Court gave this one, but the Court did fully and properly instruct the jury respecting the effects of overclaiming, if any was found to exist, and did otherwise fully and properly instruct the jury. The Court did not err in refusing to give appellant's requested instructions.

■ *PREJUDICIAL REMARK.* Appellant contends that, after the jury had retired to consider their verdict and then were called back by the Court to see if they needed assistance, the Trial Judge made a prejudicial remark in response to the foreman's question. The foreman asked the Court whether the question of royalty, i. e., the royalty imposed for the reasonable use of the invention by the infringer, was limited to this particular case or to "anything else". The Court replied that it was limited "just to this case". Appellant urges that it was error for the Court not to instruct the jury at that time that more was at stake than the $20.42 requested by appellee for the sale of one scaffold unit by the appellant. However, it clearly appears that the Court had fully and correctly instructed the jury on the measure of damages. Besides, the Judge's response "just to this case" was correct as no issue was then before the Court and jury respecting the recovery of damages other than those caused by the sale of one accused device of the appellant. No error was committed by the Trial Judge by this answer to the foreman's question.

*DAMAGES.* Appellant contends that appellee did not establish any royalty rate which could be used by the jury in assessing damages and that appellant's motion for directed verdict should have been granted for failure to prove any damage.

■■ In this kind of action, the successful patentee is entitled either to an established royalty rate, if there is one, or, if not, a reasonable royalty rate. There was evidence of one license granted by appellee to the government for two patents at the rate of 5% royalty. The Court instructed the jury that they could consider this license rate in determining what a reasonable rate of royalty would be in this case. There was no evidence of other royalties paid by other licensees to appellee. The jury returned a verdict of $12.25 based on a 3% royalty on the one $408.50 sale.

A reasonable royalty is one which a licensee would be willing to pay and still make a reasonable profit out of use of the patented article. The Court instructed the jury in almost identical terms. This appears to be a proper instruction.

■ Appellant contends that the lease to the government involved two patents and, this was not made clear to the jury, because the Court only instructed them that they could not exceed the 5% rate established by that lease. The fact that the jury found a 3% rate would indicate that they recognized the differences between the government lease and one with private enterprise. In any event, the proper standard for measuring damages was given to the jury and their verdict based on the rate of 3% on the one sale in question as found by the jury was not excessive or unreasonable under the circumstances.

In summary, our examination and consideration of the record and briefs and arguments of counsel convince us that this case was tried by experienced patent lawyers and was by the Court's instructions thoroughly and painstakingly submitted to the jury upon conflicting evidence as to all the material issues in the case. In addition to requiring their general verdict, the Court submitted to the jury the following questions which they answered in the following manner:

(1) Does the written description state the manner of constructing and using the scaffold in full, clear, concise and exact terms so as to enable a person skilled in the art to make, construct and use it?

Answer of the Jury: "Yes."

(2) Do Claims 1 and 2 point out and distinctly claim invention?

Answer of the Jury: "Yes."

(3) Do the individual elements in the claims when joined together produce a new, improved and additional result?

Answer of the Jury: "Yes."

In accordance with the three special findings and the general verdict of the jury, the Trial Court properly entered its judgment for appellee Up-Right, Inc., a corporation, and finding no reversible error we affirm the Trial Court's action. So ordered.