**UP-RIGHT, INC., Appellant,**

v.

**SAFWAY PRODUCTS, INC. and R. D. Werner Co., Inc., Appellees.**

**No. 21867.**

United States Court of Appeals
Fifth Circuit.

July 26, 1966.

Marvin Jones, Senior Judge, United States Court of Claims, dissented.

Carlisle M. Moore, Oscar A. Mellin, San Francisco, Cal., E. Hastings Ackley, Dallas, Tex., for appellant.

Marvin S. Sloman, Paul Carrington, Dallas, Tex., for appellees.

Before MARVIN JONES, Senior Judge,* and GEWIN and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

This appeal is from the judgment of the District Court holding Claims 1 and 2 of United States Letters Patent No. 2,438,173 invalid. The case had its genesis in an action for infringement of these patent claims. The District Court held that the claims were not infringed, and we reversed. Up-Right, Inc. v. Safway Products, Inc., 5 Cir., 1963, 315 F.2d 23, cert. den., 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62. Our holding was that the accused device performed substantially the same function in substantially the same way to obtain substantially the same result as the device of the patent. Form was not to be exalted over substance. We remanded for a determination of the validity of Claims 1 and 2.[1]

On remand, Up-Right, Inc., the assignee of the patent in suit and the appellant here, moved for judgment on the record. The District Court entered findings of fact and conclusions of law upon the question of validity to the effect that Claims 1 and 2 of the patent were invalid. This appeal questions the correctness of the judgment of the District Court entered on these findings and conclusions.

The facts, including the relationship of the parties, the descriptions of the structure or device of the patent and of the accused structure, as well as the facts relating to the commercial success of the structure of the patent are set out in full in our prior decision. Supra, 315 F.2d 23. It is clear from the record and from our previous decision that the patent in suit adds to the store of useful knowledge in this country. It describes and contributes a structure which is novel and which also has utility. 35 U.S.C.A. §§ 101 and 102. The question is whether the invention disclosed in Claims 1 and 2 rises above the level of subject matter which would have been obvious to a person skilled in the art of scaffolding. If so, the claims are valid; otherwise, the District Court was correct in holding the claims invalid. We agree with the District Court and thus affirm.

The Supreme Court carefully considered the question of obviousness in light of the prior art in a recent decision. Graham v. John Deere Co., 1966, 381 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545. The language of 35 U.S.C.A. § 103 was construed. It provides that a patent may not be obtained although the invention has not been identically disclosed in the prior art when the difference between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious to a person having ordinary skill in the art to which the subject matter pertains. The court determined that this most recent expression of Congress, a part of the 1952 Patent Act, was a mere reiteration or codification of the rule which the Supreme Court formulated in Hotchkiss v. Greenwood, 1850, 11 How. 248, 13 L.Ed. 683, 691, as follows:

" * * * unless more ingenuity and skill * * * were required * * * than were possessed by an ordinary mechanic acquainted with the business, there was an absence of that degree of skill and ingenuity which constitute essential elements of every invention. In other words, the improvement is the work of a skilled mechanic, not that of the inventor."

---

* Of the United States Court of Claims, sitting by designation.

1. See Footnote (1) of our prior decision, 315 F.2d 23, for text of these claims.

■ The court went on to state in *Graham* that Congress, in § 103, emphasized "non-obviousness" as the operative test of the section, rather than the less definite "invention" language of the *Hotchkiss* case. Patentability, the court said, " * * * is to depend, in addition to novelty and utility, upon 'non-obvious' nature of the 'subject matter sought to be patented' to a person having ordinary skill in the pertinent art." 86 S.Ct. 692, 15 L.Ed.2d 554.

■ The question of the validity of the patents in *Graham* was treated as one of law, but to be decided on the result of factual inquiries. These inquiries were said to include the scope and content of the prior art, the differences between the prior art and the claims at issue, and the level of ordinary skill in the pertinent art. It so happens that this was the exact frame of reference used by the District Court in making the determination of invalidity in this case. And it is worthy of note that none of the prior art considered by the District Court as a basis for its ruling was considered by the Patent Office in granting the patent in question.

We begin by considering what is claimed as the invention. It is a type of scaffolding, having three distinct features: portability, foldability and stackability. The structure of the patent in suit is described in detail in our prior decision, 315 F.2d 23, 24, as follows:

"The patent in suit covers an integrally connected assemblage of scaffold elements which may be easily erected for use as a tower type scaffold unit, and which may be easily collapsed or folded into a relatively small compact package for transportation or storage. The essential parts are permanently connected together by hinged joints, thus eliminating the loss of parts, and increasing the ease with which the scaffold may be handled and stored. Each unit includes a ladder. The units may be placed when erected, one on top of the other, to reach desired heights.

 * * * * * *

"These units are simple in design. They are of open frame or tubular con-struction. Each consists of a platform section hinged to two end or support sections with a diagonal ladder section hinged at the juncture of the platform and one of the end sections. The design is based on a triangular conception with one end section, the ladder section and the platform section forming the triangle. The other end section supports the corner of the triangle where the ladder is affixed at the juncture of that end section and the platform, and is perpendicular to the platform and parallel to the opposite end section when the unit is in the erected position. The ladder is used for the purpose of ascending to and descending from the platform section. The width of the ladder takes up one half of the width of the supporting ends of the platform section, leaving room for a deck covering the other half of the platform section from which to work. Additional units may be stacked, one upon the other, by fitting the legs of the upper unit into holes provided in the four corners of the end sections of the lower unit. * * * "

The validity of Claims 1 and 2 of this patent was upheld by the Court of Appeals for the Ninth Circuit in Beatty Safway Scaffold Co. v. Up-Right, Inc., 9 Cir., 1962, 306 F.2d 626 in the face of Martin Patent No. 1,912,947. This patent was a part of the prior art relied on by the District Court here. The Martin patent covered an invention relating to portable scaffolding. It was foldable with ladders at each end of the platform. The structure of the Martin patent was not easily adaptable to quick tower construction. It had no diagonal support of the type described in the claims in suit and thus was not based on a triangular concept.

■ We might agree with the holding of the Ninth Circuit insofar as it was based on the Martin patent but it avails appellant nothing here for that court did not have before it the additional prior art which we will now discuss. It is true that no single prior art reference contains the exact combination of elements which are

in the structure of the claims in suit but we believe the District Court correctly concluded that a person skilled in the scaffolding art as it existed prior to the patent in suit could nevertheless achieve the result of the claims in suit. The prior art available to such a person would have included not only the Martin patent which taught scaffolding foldability but also Cederquist Patent No. 2,312,148. In addition, the Boeing Aircraft Company portable diagonal stairway scaffold, and the Southern California Wind Tunnel scaffold structure, both of which had been described in publications more than one year prior to the application for the patent in suit, were a part of the prior art.

It is agreed that the Cederquist patent is the most pertinent prior art. Appellees' expert so testified. He also testified that there was substantial difference between the structure of the patent in suit and the structure of the Cederquist patent. This is true but the difference falls short of demonstrating patentability when considered with Cederquist, the Martin patent, the Boeing scaffolding, the Southern California wind tunnel scaffold, and the stacking art theretofore made known by Uecker Patent No. 2,195,-906. These are all a part of the prior art which would have been available to a person skilled in the scaffolding art seeking to solve the need for a portable and foldable scaffold which might be constructed in units so as to stack one upon the other to achieve desired heights.

The Cederquist patent was for a combination step ladder. It was foldable, portable and based on triangular concept. The object of it was to provide means for supporting a platform in a horizontal position at the top of a ladder so that a person might walk up the ladder and then move over the platform. It consisted of a ladder on one end which served to support the platform with the top of the ladder being fixed to the platform; a leg support perpendicular to the platform and fixed to the end of the platform opposite the ladder end. This support is somewhat parallel to the ladder with the lower end being affixed to a diagonal member running from that end of the support upward to connect with the juncture of the ladder and the platform.

The patent in suit described a structure having the ladder occupying the place of the diagonal member and having a perpendicular end support in the place of the ladder of Cederquist. This structure is rectangular in shape, higher, and necessarily wider so as to make sufficient width for the width of the inside diagonal ladder and the platform which occupies the remaining portion of the top of the structure. It was a combination of elements resulting in a portable and foldable scaffold having a ladder and platform just as was the case in Cederquist.

The structure of the patent in suit would be obvious from an overlay of a sketch of the Boeing scaffold or the Southern California wind tunnelling scaffold on a sketch of the structure of the Cederquist patent. These latter scaffolds were not foldable. They were portable. The Boeing scaffold was eighteen to twenty feet high, made of welded steel tubular construction with a diagonal ladder section affixed to the side of the rectangular portion of the scaffold. It was designed for use in working on the outside of aircraft. The work was done from the ladder. The wind tunnel scaffold was designed for use in maintenance work in the tunnel. It was made of steel tubing and consisted of end frames and a top platform section covered with plywood. The end frames were made up of six foot sections joined in erection, one on top of the other, and the scaffold could be dismantled section by section. It had an interior diagonal stairway section for the purpose of reaching the platform. Martin, Cederquist, the Boeing and the wind tunnel scaffolds, when considered together, would teach foldable and portable scaffolding based on a triangular concept. The Uecker patent related to portable scaffolding which might be stacked to reach any desired height and thus taught stacking.

We are under the decided impression that this prior art, when considered to-

gether, would furnish a sufficient basis for a person skilled in the scaffolding art to achieve the desired result of a portable and foldable scaffold with interior stairway for support and safety which might be constructed in a manner so as to stack one upon another to achieve any desired height. This result is the structure of the claims in suit. Therefore, it follows that the District Court was not in error in holding them invalid. The subject matter of these claims did not rise to the level of an invention within the meaning of the patent laws for want of "nonobviousness" over the prior art.

Affirmed.

MARVIN JONES, Senior Judge, United States Court of Claims (dissenting):

I respectfully dissent. I feel strongly that the patent in suit passes the test of nonobviousness, formulated by the Patent Act of 1952, 35 U.S.C. § 103 (1964), and construed by the Supreme Court in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). The majority of this court, and the court below, although professing to be guided by the factual inquiries specified in Graham,[1] in my judgment misapply these tests and thereby reach an erroneous legal conclusion.

A patent awarded by the Patent Office is to be presumed valid, and the burden of establishing invalidity falls on the party asserting it. 35 U.S.C. § 282 (1964). "[T]he primary responsibility for sifting out unpatentable material lies in the Patent Office." Graham, supra, 383 U.S. at 18, 86 S.Ct. at 694. The majority here gives emphasis to the fact that none of the prior art considered by the District Court was before the Patent Office when it granted the patent in suit. But the party attacking the validity of a claim can always find references which the Patent Office did not consider. The question is whether the references are of such

significance that the presumption of validity is overcome and the decision of the Patent Office may be set aside. Otto v. Koppers Co., 246 F.2d 789 (4th Cir. 1957), cert. denied, 355 U.S. 939, 78 S.Ct. 427, 2 L.Ed.2d 420 (1958). Nowhere has appellee attempted to show directly that the prior art which the Patent Office did consider was in fact insufficient in comparison with the references introduced before the District Court.

Of the references before the District Court the most significant was the Cederquist patent, a non-stackable combination step ladder-scaffold. Appellee's expert testified to a substantial difference between this device and the patent in suit. In an effort to demonstrate the similarity between the Cederquist step ladder-scaffold and the patent in suit, appellee introduced before the District Court two models of the Cederquist device, modified on the basis of the Up-Right scaffold.

A careful reading of the record indicates strongly that it was the modified Cederquist devices which the court below felt could be combined with prior art to disclose the patent in suit. The fallacy in this approach, however, is that the modified Cederquist device is not prior art. It is a common but fundamental error to substitute hindsight for anticipation in assessing patent validity, Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 435, 31 S.Ct. 444, 55 L.Ed. 527 (1911); Topliff v. Topliff, 145 U.S. 156, 161, 12 S.Ct. 825, 36 L.Ed. 658 (1892); Duo-Flex Corp. v. Building Service Co., 322 F.2d 94, 96 (5th Cir. 1963), and this court should disregard any conclusions reached below on the basis of such an error.

The Martin device, discussed by the majority and the court below, has as much in common with the Up-Right scaffold as any other example of prior art. Both are collapsible and easily portable.

1. "Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined." 383 U.S. at 17, 86 S.Ct. at 694.

Both stand at relatively the same height. Significantly, the major features which distinguish the two are the same features which distinguish the claims in issue from the Cederquist device: stackability, adaptability for tower construction, location of ladders diagonally within the structure. And it was on the basis of these features that the patent in suit was held valid by the Ninth Circuit in a comparison with the Martin patent. Beatty Safway Scaffold Co. v. Up-Right, Inc., 306 F.2d 626, 629–630 (9th Cir. 1962), cert. denied, 372 U.S. 934, 83 S.Ct. 881, 9 L.Ed.2d 766 (1963).

The question therefore remains not what the modified Cederquist patent (changed to specifically incorporate the distinguishing features) revealed in combination with the Boeing and Southern California devices, but what Cederquist's original features in combination tell us. I am convinced that an overlay of the patented Cederquist scaffold on either the Boeing or Southern California scaffold, or both, would not suggest the unique combination of features expressed in the patent in suit.

It is also not clear to me what the Boeing scaffold and the Southern California wind tunnel scaffold teach with regard to the claims in issue. The Boeing scaffold is a rigid, non-collapsible structure 18 to 20 feet high. It is *movable,* in that it is not permanently fixed to the ground, but it is certainly not *portable,* as the court below and the majority here specifically state, if we are to accept even an approximation of Webster's definition: "Capable of being carried; easily or conveniently transported; light or manageable enough to be readily moved." Webster's 3d New International Dictionary (Unabridged) (1961). The Southern California wind tunnel scaffold is collapsible, but stipulations show that it takes nine man-hours to disassemble it; it also is movable as opposed to portable. These devices, useful in their own way, are certainly not suggestive of the collapsible separate units of appellant's device, which can be set up and taken down quickly, which can be stacked to heights of over 300 feet, which can be transported in a truck, or carried place to place by one man.

On the basis of the foregoing, I cannot accept that the patent in suit was revealed by prior art, considered individually or in combination. The test is obviousness to a skilled mechanic in the field. In *Graham,* the Supreme Court twice emphasizes that the standard of patentability has not changed. 383 U.S. at 17 and 19, 86 S.Ct. 684. The test has simply been clarified. If what the claims in issue did was obvious, then the majority decision by this court has measurably changed the standard, which in the light of *Graham* it ought not to do.

In ascertaining the obviousness or nonobviousness we are not limited to an examination of prior art. If validity is in question, then "commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter * * *. As indicia of obviousness or nonobviousness, these inquiries may have relevancy." *Graham,* supra, 383 U.S. at 17–18, 86 S.Ct. at 694. Admittedly commercial success in iself does not support patentability, Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 153, 71 S.Ct. 127, 95 L.Ed. 162 (1950), but once novelty and utility have been established, as they have been with respect to the patent in suit, commercial success weighs heavily against the contention that the claims in issue were obvious to skilled mechanics in the same field. Loom Co. v. Higgins, 105 U.S. 580, 26 L.Ed. 1177 (1881); Otto v. Koppers Co., supra, 246 F.2d at 799–800.

The commercial success of the Up-Right scaffold is not contested, although appellee would have us believe that it was due in large measure to modern materials. What is significant is that in this crowded art Up-Right scaffolds were quickly accepted and purchased in large numbers by government and private enterprise. The buyers were apparently impressed with the ease with which individual components could be transported, erected,

and later disassembled. The Signal Corps found the ability of the components to be mounted one on the other to be superior to a previously used telescoping device. Testimony was given that sufficient units for a 200-foot tower can be transported in a truck. If these features were obvious, then the classic question remains of why others had not come forward with the improvements. Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 279, 64 S.Ct. 593, 88 L.Ed. 721 (1944); Allen v. Standard Crankshaft & Hydraulic Co., 323 F.2d 29, 34 (4th Cir. 1963). And why did appellee copy the Up-Right scaffold with only minor changes? Up-Right, Inc. v. Safway Products, Inc., 315 F.2d 23 (5th Cir.), cert. denied, 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62 (1963).

During the last 50 years our country has had the greatest building program any nation has been able to crowd into a half century. Naturally there have developed during that period multiplied thousands of skilled mechanics and builders. Sky-scrapers have been constructed in scores of cities throughout the United States.

During all this time these skilled people have built and torn down scaffolding at individual structures in extensive and time-consuming operations only to build a new scaffolding at the next structure. If appellant's invention of unfolding and stacking collapsible sections to great heights and, after finishing a structure, quickly folding and hauling the scaffolding to another building under construction, thus economically using the stackable sections over and over again, was obvious to a skilled mechanic, isn't it strange that in more than 50 years of continuous building one of these skilled mechanics or artisans did not discover the process.

Then why did the Government rush to purchase thousands of the new invention? Why did the building trade immediately adopt the new article? Why did the other corporations copy the new method with only slight changes, and no change

in the idea, and start into competitive sales?

My conclusion is that appellant had *invented* something, something not obvious to others, something not a mere mechanical improvement. It is almost a reflection on the skilled artisans and mechanics of the vast building trade of this country to hold that they overlooked so important a development, but plodded along with clumsier and more expensive methods. I prefer to believe in the skill of these mechanics and artisans. It is plain they welcomed the Up-Right scaffold.

By holding the patent in suit invalid, we have done not only an injustice to appellant but have placed an unreasonable and discouraging burden on future inventors. For these reasons I cannot join the majority.

