**In re DAHLGREN INTERNATIONAL, INC., Debtor.**

**BALDWIN TECHNOLOGY CORPORATION, Plaintiff,**

v.

**DAHLGREN INTERNATIONAL, INC., Defendant.**

**Civ. No. 3:89–CV–0501–H.**

United States District Court, N.D. Texas, Dallas Division.

Oct. 15, 1992.

See also 147 B.R. 393, 811 F.Supp. 1182.

William B. Steele, III, Susan L. Karamanian, Locke Purnell Rain Harrell, Dallas, TX, and Warren H. Rotert and Vincent A. Castiglione, Morgan & Finnegan, New York City, for plaintiff.

Donald C. Templin and Phillip B. Philbin, Haynes & Boone, Dallas, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

Before the Court are the following: Report of the Defendant as to Damages, filed August 27, 1992 ("Dahlgren's Report"); Report of Baldwin as to Damages, filed August 27, 1992 ("Baldwin's Report"); separate briefs by the parties on the subject of the Court's discretion to hear additional damages evidence after trial, both filed September 18, 1992; letter from Defendant

Dahlgren, dated October 9, 1992 and filed herewith; and a letter from Plaintiff Baldwin, dated October 12, 1992 and filed herewith.

## I. Background

This case was tried before the Court in a non-jury trial on July 20–23, 1992. The Court found that Dahlgren had wilfully infringed Baldwin's dampening system patent and that Baldwin was therefore entitled to treble damages. *See* Findings of Fact and Conclusions of Law, filed August 7, 1992, at 18, 20. The Court also found that the proper measure of damages was not "lost profits," as Baldwin contended, but a "reasonable royalty". *Id.* The Court set the royalty at 7½% and held that "damages shall be determined by multiplying the ... royalty with the overall sales of the infringing differential drive units of PX–2 and PX–164 that have been produced by Dahlgren or Dahlgren U.S.A.[1] since May 12, 1989...." *Id.*

Because the evidence before the Court was insufficient to make such a determination, the Court ordered the parties to submit further evidence as to how many of the infringing machines had been sold during the relevant time period. *Id.* The parties did so on August 27, 1992. *See* Baldwin's Report as to Damages, filed August 27, 1992; Defendant's Report as to Damages, filed August 27, 1992.

## II. Analysis

■ A preliminary issue, raised by Dahlgren, is whether or not the Court may properly hear additional evidence on damages after trial. After considering the briefs on this subject filed by the parties on September 18, 1992, the Court has determined that it has such discretion. *See Zenith Radio v. Hazeltine Research, Inc.,* 401 U.S. 321, 331, 91 S.Ct. 795, 802–803, 28 L.Ed.2d 77 (1971) (motions to reopen to submit additional proof are subject to the discretion of the trial judge). Thus, the damages issue is properly before the Court at this time. In accordance with letters submitted by the parties, the Court will award damages based on the parties' Reports as to Damages, filed August 27, 1992. *See* Plaintiff's Letter dated October 12, 1992 and filed herewith; Defendant's Letter dated October 9, 1992 and filed herewith.

It now remains to determine the appropriate sales figure to be multiplied by the 7½% royalty. Both parties based their Reports on sales figures given them by Dahlgren USA. Baldwin asserts that the total sales figure should be $1,694,733.61. Dahlgren arrives at lower figures based essentially on three arguments.

First, Dahlgren contends that approximately half of the differential drive dampeners sold during the relevant time period were not infringing units because Dahlgren USA had modified the design by adding air cylinders. Sales of such units, argues Dahlgren, should not be counted towards the total sales figure. The Court, having heard evidence regarding air cylinders at trial, does not agree with Dahlgren's analysis. In accordance with its Findings of Fact and Conclusions of Law, the Court will count all differential drive dampeners sold, with or without air cylinders, after May 12, 1989, towards the total sales figure.

■ A second issue, not hotly contested, is whether or not to include the value of two units, the "Mansfield Tool Units". While Dahlgren USA apparently received no actual monetary compensation for these units, the parties agree that their value is $53,600. The Court finds that the value of these two units should be included, since they were infringing units and some benefit was presumably received from their transfer, even if it was not a monetary payment.

---

**1.** Dahlgren International Inc., the defendant in this suit, filed for bankruptcy and had its Second Amended Plan for Reorganization confirmed by the bankruptcy court on May 12, 1989. During the bankruptcy proceeding, Dahlgren licensed Dahlgren USA to use the differential drive dampener technology. This Court held that Dahlgren induced Dahlgren USA to infringe Baldwin's patent and that therefore Dahlgren would be liable for sales of the machines by Dahlgren USA. *See* Findings of Fact and Conclusions of Law at 17–18.

The final dispute between the parties is over whether money received for parts and services related to the infringing units should be included in the total sales figure. Dahlgren's figure of $1,605,931.06 represents only the amount received for the machines themselves. Baldwin's figure of $1,694,733.61 includes money received for components and services related to the infringing units, such as spare parts and installation charges.

 In support of its position, Baldwin cites *Beatrice Foods v. New England Printing*, 899 F.2d 1171 (Fed.Cir.1990) and *Paper Converting Machine v. Magna–Graphics*, 745 F.2d 11 (Fed.Cir.1984). In those cases, the Federal Circuit upheld the district court's inclusion of related but non-infringing components in the damages calculation. *Beatrice Foods*, 899 F.2d at 1175; *Paper Converting Machine*, 745 F.2d at 23. However, in both cases the measure of damages used was "lost profits," not a "reasonable royalty," as here. The rationale for including related goods and services in a lost profits calculation is that the plaintiff would have made those sales but for the infringement; thus, they are profits lost due to the infringement. *Paper Converting Machine*, 745 F.2d at 23. In contrast, the rationale behind a reasonable royalty measure of damages is that the plaintiff is entitled to a royalty on the patented product itself, as if the plaintiff and infringer had entered into a licensing agreement. *See Beatty Safway Scaffold Co. v. Up–Right, Inc.*, 306 F.2d 626, 632 (9th Cir.1962). The Court finds that Baldwin is not entitled to a royalty on non-patented goods and services.

Taking into account the resolution of the above issues, the total sales figure to be used is $1,605,931.06. *See* Dahlgren's Report at 2; Exhibit C to Baldwin's Report.[2] This represents the total value of all in-

fringing units, including the two Mansfield Tool Units, and excluding parts and services. When multiplied by the royalty of 7½% set ,by the Court, the number becomes $120,444.82. Baldwin is entitled to treble this amount, or $361,334.46, plus prejudgment interest. *See Paper Converting Machine*, 745 F.2d at 23.

SO ORDERED.

In re **DAHLGREN INTERNATIONAL, INC., Debtor,**

---

**2.** The $1,605,331.06 amount was taken from Dahlgren's Report. *See* Dahlgren's Report at 2. However, the numbers submitted by Baldwin add up to roughly the same total. Exhibit C to Baldwin's Report is a table compiled by Baldwin based on the numbers submitted by Dahlgren USA. The last column, "Reported Sales Price," contains the figures for the infringing units minus the amount of parts and services, and not including the Mansfield Tool Units. The table erroneously reports the total for this column as $1,522,331.06. The total should be $1,552,330.90. When the value of the Mansfield Tool Units is added, the total comes out to $1,605,930.90, approximately equal to the $1,605,931.06 figure submitted by Dahlgren.