**DEERE & COMPANY, Plaintiff,**

v.

**HESSTON CORPORATION, Hesston of Texas, Inc., and Joe Ed Crawford, doing business as Crawford Equipment Company, Defendants.**

**Civ. A. No. 5–662.**

United States District Court,
N. D. Texas,
Lubbock Division.
March 23, 1970.

Marvin S. Sloman, Carrington, Johnson & Stephens, Dallas, Tex., Dugald S. McDougall, Theodore R. Scott, Melvin M. Goldenberg, Chicago, Ill., for plaintiff.

Richard R. Lee, Jr., Ritchie, Ritchie & Crosland, Dallas, Tex., Speir, Stroberg & Sizemore, Newton, Kan., Gordon D. Schmidt, Schmidt, Johnson, Hovey, Williams & Chase, Kansas City, Mo., for defendants.

### FINDINGS OF FACT
and
### CONCLUSIONS OF LAW

WOODWARD, District Judge.

The above-entitled cause having come on for trial and the Court having duly considered the evidence, and being fully advised in the premises, the Court now makes the following:

### FINDINGS OF FACT

1. This is an action charging infringement by defendants of Claims 15, 16, 18 and 19 of plaintiff's U. S. Patent No. 3,397,522, entitled "Cotton Harvester," in which defendants have filed a counterclaim for a declaratory judgment holding that said claims are invalid.

2. Plaintiff Deere & Company is a Delaware corporation having its principal place of business at Moline, Illinois; defendant Hesston Corporation is a Kansas corporation having its principal place of business at Hesston, Kansas; defendant Hesston of Texas, Inc., is a Texas corporation having a place of business in Dallas, Texas; and defendant Joe Ed Crawford is a resident of Levelland, Texas, doing business as Crawford Equipment Company in that city.

3. Defendants do not contest plaintiff's charge that Model 24–A cotton harvesters of the type marketed by defendant Hesston Corporation prior to September, 1969 infringe Claims 15, 16, 18 and 19 of plaintiff's U. S. Patent No. 3,397,522; they concede that if said claims are valid, said Model 24–A cotton harvesters infringe them.

4. During the prosecution of the application which matured into plaintiff's

patent in suit, the following prior art patents were cited by the Examiner (Def.Exh. 25, p. 29):

| Baldwin | No. | 911,802 | (Def. Exh. 27) |
| Boone | No. | 2,406,058 | (Def. Exh. 32) |
| Miller, et al | No. | 2,673,438 | (Def. Exh. 33) |
| Andrews | No. | 2,807,925 | (Def. Exh. 34) |
| Bopf | No. | 2,820,989 | (Def. Exh. 35) |
| Sisulak | No. | 2,833,409 | (Def. Exh. 36) |
| Fowler | No. | 2,861,298 | (Def. Exh. 37) |

5. Claim 15 of said application was initially rejected under 35 U.S.C. 103 as unpatentable over Andrews No. 2,807,-925 (Def.Exh. 34) in view of Baldwin No. 911,802 (Def.Exh. 27). (Def.Exh. 25, p. 28).

6. The Patent Office failed to cite Harazin No. 1,885,437 (Def.Exh. 29) whereupon plaintiff called this patent to the attention of the Patent Office (Def.Exh. 25, p. 42).

7. Claims 15, 16, 18 and 19 here in issue were revised by plaintiff in its response to the rejection (Def.Exh. 25, pp. 39, 40).

8. In its argument for the allowance of Claim 15, plaintiff represented to the Patent Office as follows:

"The air regulating means that is provided in the present structure and as set forth in claim 15 is in the separating chamber and does in effect adjust the intensity of the secondary stream in relation to the mixture. This feature is important for if the air in the separating chamber is fed entirely from the exterior, there will be no suction created in the mixture. * * * It should be noted in the references cited the air regulating means has been for the purpose of adjusting the air in the primary duct and not in a chamber in which air is being drawn by the primary duct. Therefore, it is believed that the references cited do not teach the principle of claim 15." (Def.Exh. 25, p. 45).

9. The Court finds that the limitation of the claims in issue reading: "air regulating means on the separating chamber for effecting the intensity of the secondary stream in relation to the mixture" was a feature important to the allowance of the claims in issue based on the prior art considered by the Patent Office.

10. The Court finds additionally that the references cited by the Patent Office disclose and describe air regulating means for the purpose of adjusting the air in the primary duct and not in a chamber in which air is being drawn by the primary duct.

11. The Harazin patent No. 1,885,-437 (Def.Exh. 29) illustrates and describes the same arrangement as that illustrated and as described in the patent in suit and as set forth by claim 15 in issue with respect to the following parts and limitations:

a cotton harvester having discharge means in which cotton is discharged in a commingled mixture of ripe and green bolls,

a chamber in material receiving relation to the discharge means for receiving the mixture,

a duct structure projecting from the chamber and having an intake end offset from the chamber,

a blower having an outlet directed into the intake end of the duct directing a primary stream of air through the duct, and

communicating means between the chamber and duct opening into the duct whereby the primary stream of air will induce a secondary stream of air in the chamber.

12. The Harazin patent No. 1,885,437 (Def.Exh. 29) also illustrates and describes the same arrangement as that illustrated and described in the patent in suit and as set forth by claims 16, 18 and 19 in issue with respect to the following limitations:

the duct is vertically disposed,

the chamber is at the base thereof,

the blower outlet is directed upwardly,

the communicating means is an opening between the chamber and duct above the blower outlet,

the blower outlet and the opening of the communicating means open into the duct and

are closely adjacent to one another

with one being substantially on the main axis of the duct and

the other being offset from the axis and adjacent said outlet, and wherein

the primary stream of air is introduced into the duct through the blower outlet and

is directed along the primary axis of the duct and

the opening of the communicating means into the duct is offset from the axis.

13. The air elevator for cotton as disclosed and described in the Harazin patent No. 1,885,437 (Def.Exh. 29) does not separate the ripe from the green bolls of the mixture discharged into the chamber in which secondary air is induced by the primary stream of air, and does not provide for air regulating means on such chamber.

14. Air regulating means for effecting the intensity of a stream of air used to separate and elevate light materials from a commingled mixture had, however, been disclosed and described long prior to the effective date of plaintiff's patent, as evidenced by the disclosures and descriptions of the following prior art patents not cited or considered by the Patent Office:

| | | | |
|---|---|---|---|
| Gillette | No. | 888,158 | (Def. Exh. 26) |
| Gerson | No. | 453,358 | (Def. Exhs. 38, 39) |
| Herz | No. | 1,850,719 | (Def. Exh. 28) |
| Eissmann | No. | 2,173,088 | (Def. Exh. 30) |
| Randolph | No. | 2,205,173 | (Def. Exh. 31) |

15. Herz No. 1,850,719 (Def.Exh. 28), for example, discloses apparatus for separating light and heavy materials wherein a fan induces the flow of a stream of air upwardly in a separating chamber, into which chamber the commingled mixture is discharged, for separation and upward flow of the light materials, and gravitation of heavy materials below the discharge means, together with air regulating means on the separating chamber above the discharge means for effecting the intensity of the air rising in the separation chamber in relation to the mixture.

16. The German patent, Gerson No. 453,358 (Def.Exhs. 38, 39), illustrates and describes essentially the same components and geometrical relationship of parts as outlined in Findings 11 and 12 above with respect to Harazin No. 1,- 885,437 (Def.Exh. 29), and discloses and describes additionally the separation of light from heavy materials, the elevation by induced air of only the light materials from the separation chamber into the discharge duct, the gravitation of the heavy materials from the separating chamber, and Herz Patent No. 1,- 850,719 shows the use of air regulating means on the separating chamber for effecting the intensity of the induced secondary air in relation to the mixture. (Finding 15 above).

17. The Herz patent, No. 1,850,719 (Def.Exh. 28), fully discloses and describes the way in which the cotton elevator of Harazin No. 1,885,435 (Def. Exh. 29) may be used, without exercise of invention, to separate ripe from green bolls by merely providing on the induced air chamber of Harazin the air regulating means on the separating chamber of Herz, and the outlet for heavy materials as illustrated and described by Herz.

18. To the extent that it may be contended that the alleged invention as set forth in claims 15, 16, 18 and 19 of plaintiff's patent No. 3,397,522 in suit is not identically disclosed, illustrated or described by the German patent, Gerson No. 453,358 (Def.Exhs. 38, 39), the differences between the subject matter of said claims and the German patent are such that the subject matter as a whole would have been obvious at the time the alleged invention was made to a person having ordinary skill in the art to which said subject matter pertains (35 U.S.C. § 103), and the Gerson patent No. 453,- 338 anticipates all of the four claims of the Plaintiff's patent which are involved in this suit.

19. By providing, in conjunction with Harazin's air elevator in patent No. 1,-

885,437, an air regulating means on the separating chamber and the means to discharge heavy materials as disclosed, illustrated and described by both Herz patent No. 1,850,719 (Def.Exh. 28) and by the Gerson patent No. 453,358 (Def. Exhs. 38, 39), for the purpose of separating ripe from green bolls, the alleged invention set forth in claims 15, 16, 18 and 19 in issue would have been obvious (35 U.S.C. § 103).

20. The provision in the air elevator for cotton disclosed by Harazin No. 1,-885,437 (Def.Exh. 29) of the air regulating means on the separating chamber and the means to discharge heavy materials as disclosed, illustrated and described by Herz No. 1,850,719 (Def.Exh. 28) for the purpose of separating ripe from green bolls would have been obvious at the time of the alleged invention set forth in claims 15, 16, 18 and 19 in issue (35 U.S.C. § 103).

21. The provision on the separating chamber of the air elevator of Gerson No. 453,358 (Def.Exhs. 38, 39) of the air regulating means on the separating chamber as disclosed, illustrated and described by Herz No. 1,850,719 (Def.Exh. 28) would have been obvious at the time of the alleged invention set forth in claims 15, 16, 18 and 19 in issue (35 U.S.C. § 103).

22. The prior art patents relied on by defendants in this action (Finding No. 14 above) and not cited or considered by the Patent Office, disclosing and describing air regulating means for effecting the intensity of a stream of air used to separate and elevate light materials from a commingled mixture, constitute better and more pertinent references against claims 15, 16, 18 and 19 of plaintiff's U. S. patent No. 3,397,522 than any of the prior art patents relating to air regulating means for adjusting air in the primary duct cited and considered by the Patent Office during the prosecution of the application for plaintiff's patent.

23. The German patent, Gerson No. 453,358 (Def.Exhs. 38, 39), relied on by defendants in this action and not brought to the attention of or considered by the Patent Office during the prosecution of the application for plaintiff's patent constitutes a better and more pertinent reference against claims 15, 16, 18 and 19 of plaintiff's U. S. patent No. 3,397,522 than Harazin No. 1,885,437 (Def.Exh. 29).

24. The Herz patent No. 1,850,719 (Def.Exh. 28) relied on by the defendants in this action and not cited or considered by the Patent Office, disclosing, illustrating and describing air regulating means on a separating chamber in which air is induced by a fan for the purpose of effecting the intensity of the stream of air in the separating chamber in relation to the mixture, with the light materials separated and elevated by such air, and with the heavy materials gravitating from the separating chamber, constitutes a better and more pertinent reference against claims 15, 16, 18 and 19 of plaintiff's U. S. patent No. 3,397,522 than any of the prior art patents relating to air regulating means for adjusting air in the primary duct cited and considered by the Patent Office during the prosecution of the application for plaintiff's patent.

25. The German patent, Gerson No. 453,358 (Def.Exhs. 38, 39), discloses a machine in which the separation of materials of different specific weights (or the separation of green cotton bolls from ripe bolls) is achieved by the use of a secondary or induced air stream, the velocity of which can be regulated by adjustable means positioned on the separating chamber as shown in Herz patent No. 1,850,719 (Def.Exh. 28), and in which the desired materials (or ripe cotton bolls) are then transported to a collecting area by the primary air stream which induces the secondary air stream in the separating chamber.

Based on the foregoing Findings of Fact, the Court now makes the following:

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and the subject matter of this

action (Pre-Trial Order, page 3, stipulation 1).

2. Plaintiff is the owner of U. S. patent No. 3,397,522 (Pre-Trial Order, page 4, stipulation 2).

3. Claims 15, 16, 18 and 19 of plaintiff's U. S. patent No. 3,397,522 are invalid. (35 U.S.C. §§ 102 and 103.)

4. Defendants have not contested plaintiff's charge of infringement of claims 15, 16, 18 and 19 of plaintiff's U. S. patent No. 3,397,522 by the manufacture, use or sale of defendants' Model 24–A cotton harvesters of the type marketed prior to September, 1969; if said claims were valid, therefore, such Model 24–A cotton harvesters would infringe them (Pre-Trial Order, page 4, stipulation 3).

5. The ultimate issue under 35 U.S.C. § 103 is one of law. Great Atlantic & Pacific Tea Co. v. Supermarket Equip. Corp., 1950, 340 U.S. 147, 71 S. Ct. 127, 95 L.Ed. 162; Graham v. John Deere Co., 1966, 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545, 556; Swofford v. B. & W., Inc. (5th Cir. 1968), 395 F.2d 362, 368; Kiva Corp. v. Baker Oil Tools, Inc. (5th Cir. 1969), 412 F.2d 546, 552.

6. Any unpatentable machine lacking the level of invention required for federal patents and representing too slight an advance to be properly patented belongs to the public and may be followed in every detail at will by whoever pleases regardless of the motives. Sears, Roebuck & Co. v. Stiffel Co., 1964, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661; Compco Corp. v. Day-Brite Lighting, Inc., 1964, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669.

7. To establish invalidity it is not necessary that all of the elements of the combinations of the claims in issue be found in a single prior art patent; it is sufficient to show that the evidence, taken as a whole, discloses that all of the claimed elements are found in different prior art patents. Zero Mfg. Co. v. Mississippi Milk Pro. Ass'n (5th Cir. 1966), 358 F.2d 853, 857; Fairchild v. Poe (5th Cir. 1958), 259 F.2d 329, 332.

8. Whether or not prior art patents have ever been reduced to commercial practice or put to use is wholly irrelevant to the question of whether or not such patents constitute anticipation. Edward Valves, Inc. v. Cameron Iron Works, Inc. (5th Cir. 1961), 286 F.2d 933, 939; National Filters, Inc. v. Research Products Corp. (5th Cir. 1967), 384 F.2d 516, 518.

9. The presumption of patent validity provided by 35 U.S.C. 282 is weakened, if not totally destroyed, when, as here, the prior art patents relied on by defendants constitute better and more pertinent references against the claims in issue than those considered by the Patent Office, and the evidence shows that the Patent Office did not have all such relevant art before it when the patent in suit was issued. Rosaire v. Baroid Sales Division (5th Cir. 1955), 218 F.2d 72, 75; American Seating Co. v. Southwestern Metals Co. (5th Cir. 1969), 412 F.2d 756, 760.

10. Commercial success is not a substitute for invention, is not sufficient evidence of invention where lack of invention is plain, and does not alone prove non-obviousness. Mannix Co. v. Healey (5th Cir. 1965), 341 F.2d 1009, 1015; National Filters, Inc. v. Research Products Corp. (5th Cir. 1967), 384 F. 2d 516, 520.

11. Accordingly, judgment will be entered dismissing Plaintiff's suit and declaring claims 15, 16, 18 and 19 of U.S. Letters Patent No. 3,397,522 invalid.