DEERE & COMPANY, Plaintiff-Appellant,

v.

HESSTON CORPORATION, Hesston of Texas, Inc., et al., Defendants-Appellees.

No. 29768.

United States Court of Appeals, Fifth Circuit.

March 12, 1971.

Rehearing Denied and Rehearing En Banc Denied April 13, 1971.

Jones, Circuit Judge, dissented and filed opinion.

Marvin S. Sloman, Dallas, Tex., Dugald S. McDougall, Theodore R. Scott, Chicago, Ill., for plaintiff-appellant.

---

Richard R. Lee, Jr., Dallas, Tex., Speir, Stroberg & Sizemore, Newton, Kan., Gordon D. Schmidt, Kansas City, Mo., for defendants-appellees.

Before JONES, BELL, and SIMPSON, Circuit Judges.

BELL, Circuit Judge:

This appeal arises out of litigation over a patent. Deere & Company brought an action against defendants charging infringement of Claims 15, 16, 18 and 19 of its patent (U.S. Letters Patent No. 3,397,522 entitled "Cotton Harvester"). By way of a counterclaim, defendants sought a declaratory judgment that the claims in suit were invalid. Infringement was subsequently admitted by defendants, thus leaving only the validity issue for trial. The district court concluded that the claims were invalid, 316 F.Supp. 866, and we affirm.

The device of the patent is the air elevator portion of a cotton stripper wherein ripe and green cotton bolls previously stripped from the cotton stalk are to be separated. The essence of the invention is to eliminate the green bolls in a separation chamber while advancing the ripe bolls through an air elevator to a collection point. The ripe bolls are drawn from the separation chamber by an air system through a blower duct extending vertically in an upward direction from the chamber.

The problem in the industry had been the inability to separate the green and ripe bolls once the green bools began to dry out during the latter part of the season. The practice in the industry was to discharge the ripe bolls through the vertical air duct by producing an air velocity through the use of a fan. In so doing the lighter green bolls were carried through the duct to the collection point along with the ripe bolls. This could be avoided by reducing the air velocity but this resulted in a velocity which was inadequate to carry the ripe bolls upward through the duct.

Under Deere's patent, a jet pump was substituted for the fan thus creating a primary and secondary air stream. The secondary air stream created a suction, thereby pulling the bolls upward through the duct to be moved to the collection point in combination with the primary air stream. In order to solve the problem of moving only the ripe bolls, Deere employed a means of regulating the velocity of the secondary air stream which was induced by the jet pump. It is a part of the Deere invention to use an air regulating means in the form of an opening above the separation chamber to control the intensity of the secondary stream so as to maintain differing velocities between the air in the separation chamber and in the duct above the opening. This air regulating means or opening is in the form of a window on the vertical duct and above the separation chamber. The velocity of the air stream as between the separation chamber and the duct is regulated by the degree to which the window is opened.

The evidence demonstrated that the result of the Deere device was such that in a test it separated more than 120 pounds of green bolls from the stripped bolls while the nearest competitor separated less than 10 pounds of green bolls. The Deere harvester, employing the patented air elevator, enjoyed immediate commercial success.

Hesston became aware that its cotton stripper could not compete with Deere's stripper as equipped with the new air elevator and its engineering department was requested to design a competitive machine. Their efforts were finally discarded as unsuccessful and it was decided to copy Deere's air elevator. This fact is not contested and it is conceded that Hesston's model 24–A cotton stripper infringes the claims in suit if they are valid.

The district court found that the patent in suit was a mere combination of elements found in the prior art; that certain prior art patents were more pertinent references against the claims in issue than those considered by the Patent Office; that the lack of invention

was plain; and that commercial success was not a substitute for invention. The prior art patents which the court deemed more pertinent were the Harazin Patent No. 1,885,437; Herz Patent No. 1,850,719, Gerson Patent No. 453,358, a German patent. Of these, only Harazin was called to the attention of the Patent Office. The court concluded that the claims in suit would have been obvious at the time the alleged invention was made to a person having ordinary skill in the art in question in light of these patents.

The approach to be used in determining obviousness or nonobviousness under the patent statutes, 35 U.S.C.A. § 103,[1] was stated in Graham v. John Deere Co., 1966, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed. 2d 545, as follows:

> " * * * Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. * * * " 383 U.S. at 17, 86 S.Ct. at 694.

See also Anderson's-Black Rock v. Pavement Salvage Co., 1969, 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258; Sisko v. Southern Resin & Fiberglass Corporation, 5 Cir., 1967, 373 F.2d 866; Up-Right, Inc. v. Safway Products, Inc., 5 Cir. 1966, 364 F.2d 580.

We turn then to assaying the pertinent prior art in an effort to determine the correctness of the conclusion of the district court. As will be seen, the pneumatic elevation of cotton and other material as well as pneumatic separation of heavy and light materials was old in the art. Deere combined a jet pump with an air regulating means to solve an extant problem in the cotton harvesting field. It is undisputed that this combination performed a useful function and achieved wide commercial success. The question is whether the combination was " * * * an invention by the obvious-nonobvious standard." Anderson's-Black Rock v. Pavement Salvage Co., supra, 396 U.S. at 62–63, 90 S.Ct. at 309.

The Harazin patent, cited to the Patent Office by plaintiff, teaches the use of a jet pump in an air elevator to convey cotton. The secondary streams of air lifts the cotton out of a chamber and into the primary air stream which operates, in turn, to blow the cotton upward through a duct into a collection point. Harazin did not teach the use of the secondary stream to separate light and heavy materials in conjunction with a separation chamber. Harazin did not embrace the prime essential in Deere's patent: a regulating means for affecting the intensity of the secondary stream in connection with the separation chamber.

Gerson, a German patent, was not cited by the Patent Office. It covered an invention to separate the different ingredients in processed garbage by weight. It employed the jet pump principle for use in the separation chamber and to elevate the lighter materials through a duct to a collection point. There is some indication of an air regulating means in the form of louvers but no indication of regulating the intensity of the secondary air stream as between the force below and above the regulating means as in the patent in suit. It will be seen at this point that the prior art teaches the use of the jet pump to separate and to elevate. This leaves the air regulating means as a method of maintaining an upward force sufficient to move the light material without interfering with the separation process in the separation chamber.

1. § 103:
"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

This brings us to the Herz patent. It uses a suction fan as distinguished from a jet pump to separate stones and the like from coffee and cocoa beans, peanuts, grains and similar materials and to elevate the lighter materials. It teaches the use of windows between the separation chamber and the vertical air duct as air regulating means to maintain the velocity of the air stream above the windows while reducing the velocity below the windows. The result is different velocities in the same column of air; i. e., as between the lower level (the separation chamber) and the upper level (the elevator or vertical duct). This is the point where Deere fails in its effort to sustain the validity of the claims in suit. We can perceive of no substantial difference in the use or result obtained from the means of air regulation in Herz and in Deere's patent.

Thus it appears that the jet principle was old in a similar field of endeavor as was the air regulating means. Both the jet principle and the air regulating means principle are in the public domain. The combination of these known elements produced a useful function but the district court did not err in concluding as a matter of law on the fact presented that the combination would have been obvious to those skilled in the art. It is clear that the claims in suit did not constitute an invention by the obvious-nonobvious standard.

It is a peculiarity of patent law that it avails Deere nothing to point out that the combination was not obvious to defendant's engineers who gave up and copied Deere's machine. The patent monopoly may not be extended to remove existent and available knowledge from the public domain. Graham v. John Deere Co., 383 U.S. at 5–6, 86 S.Ct. 684.

Affirmed.

JONES, Circuit Judge (dissenting):

The patent which is the subject of this appeal has been hindsighted by the majority into invalidity. We do not here have a dormant field where no one was attempting to advance the art. The need for a device which would do an efficient job of boll separation had been apparent for a long time. Hesston and others had sought for years to effect a mechanism which would accomplish this purpose. After years of effort, Deere, through the mechanism covered by the Sanderson patent, achieved the desired result.

Although the device is now obvious to the majority, it eluded for a long time the searches and researches of the experts in the area of the art. The language of the Supreme Court in the Goodyear-Ray-O-Vac case is pertinent. There it is said:

"Viewed after the event, the means Anthony adopted seem simple and such as should have been obvious to those who worked in the field, but this is not enough to negative invention. During a period of half a century, in which the use of flash light batteries increased enormously, and the manufacturers of flash light cells were conscious of the defects in them, no one devised a method of curing such defects. Once the method was discovered it commended itself to the public as evidenced by marked commercial success. These factors were entitled to weight in determining whether the improvement amounted to invention and should, in a close case tip the scales in favor of patentability. Accepting, as we do, the findings below, we hold the patent valid and infringed." Goodyear Tire and Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721. See also Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545.

Pertinent also is the following language of the Supreme Court:

"Many things, and the patent law abounds in illustrations, seem obvious after they have been done, and, 'in the light of the accomplished result,' it is often a matter of wonder how they so long 'eluded the search of the discoverer and set at defiance the speculations of inventive genius.' Pearl v.

Ocean Mills, [Fed.Cas. No. 10,876] 11 Off. Gaz. 2. Knowledge after the event is always easy, and problems once solved present no difficulties, indeed, may be represented as never having had any * * *." Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527.

The principle which ought to furnish the guide to the decision here is stated by the Fourth Circuit in this language:

"Obviousness does not mean that one skilled in the art can perceive the solution after it has been found and pointed out by someone else; the test of obviousness is as of an earlier time, when the search is on." Honolulu Oil Corporation v. Shelby Poultry Co., 4th Cir. 1969, 293 F.2d 127.

This Court has said:

" * * * In determining whether invention exists in a given device, courts should guard against oversimplification through a hindsight view of the problem as originally encountered." Graham v. Jeoffroy, 5th Cir., 1953, 206 F.2d 769.

The patented device was discovered after years of fruitless search by experts on behalf of both of the parties to this appeal and others. Upon its discovery and manufacture it met with marked commercial success.

I am not persuaded that the early patents show any anticipation of the device of Deere. It seems to me unjust and not in keeping with the spirit or letter of the patent law to deny protection to the unique and useful discovery which had so long eluded the searches of the experts. I dissent.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.