The **LAITRAM CORPORATION**,
Plaintiff-Appellee,

v.

**DEEPSOUTH PACKING CO., Inc.**,
Defendant-Appellant.
No. 28286.

United States Court of Appeals,
Fifth Circuit.
May 26, 1971.

See also, 5 Cir., 443 F.2d 936.

C. Emmett Pugh, New Orleans, La., for appellant.

Louis B. Claverie, New Orleans, La., Guy W. Shoup, New York City, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for appellee.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and CLARK, Circuit Judges.

CLARK, Circuit Judge:

This patent appeal does not present purely legal questions as the appellant's attorney urges. The issues are deeply steeped in fact findings and conclusions of the trial court. This court no more retries the facts in patent cases than it does any other class of matters. Hughes Tool Co. v. Varel Manufacturing Co., 336 F.2d 61 (5th Cir. 1964). In the almost two-year period between mid-1967 and 1969 when this case was pending in the district court, the parties compiled two volumes of pleadings, 11 volumes of trial and hearing transcript, a book of written and photographic exhibits, numerous physical exhibits and over 500 pages of briefs and memoranda. In addition to this welter of material, the conscientious trial judge viewed motion pictures of the subject machinery in operation and personally witnessed actual on-site demonstrations of both the patented and allegedly infringing machinery in actual commercial establishment operation and in the form of reconstructed replicas. To record his endeavors and determinations, he filed a 30-page finding of fact and prepared and published a detailed opinion discussing the prior litigation history of these parties and dealing in depth with each of the claims raised. See 301 F.Supp. 1037 (1969). The three judges on this appellate panel have reviewed such of this material from the trial court record as has been called to our attention, together with over 300 pages of briefs

filed here, and we have listened to full oral arguments. After testing every action of the trial judge which appellant assigns as error, we find no merit in the appeal and affirm the judgment entered below.

Since the district judge has published an elaborate opinion which, with its accompanying drawings and photographs, will provide any interested reader with full information as to the most intricate function of the machinery involved, it is entirely unnecessary for us to reiterate the facts in any detail. It is sufficient for an understanding of our discussion to give the following summary. The assignors of Plaintiff-Appellee, The Laitram Corporation (Laitram), obtained two United States patents covering machinery designed to remove the veins from the back of previously peeled shrimp meats on a high volume, low labor basis. Viewed from the standpoint of the product processed—the shrimp meats—the physical function of the patented machinery is this. The peeled shrimp meats are delivered to the top of an inclined trough, then, with the aid of lubricating water, gravity and a physical phenomenon first noticed by these inventors cause the meats to slide back first through a series of knives positioned in a herringbone pattern down the length of the trough, in the course of which zig zag motions the backs of the shrimp meats strike again and again against sharp knives which slit the back open and expose the vein. The sloshing water also acts to wash loose some, but less than a commercially acceptable number, of the veins during the course of this journey. At the bottom of the trough the meats fall into a tank containing running water and a turning drum constructed of punched metal, having an inside surface composed of numerous projections similar to fingernails which catch and remove the remaining veins while the running water moves the meats along the length of the drum to the point of discharge. This machinery is covered by two separate patents. Patent #2,694,218 (218) covers the inclined trough and knife portion of the machinery, while patent #2,825,927 (927) covers the punched metal drum apparatus.

The Defendant-Appellant, Deepsouth Packing Company, Inc. (Deepsouth), has manufactured competing devices which perform the identical function. Deepsouth's watered trough has its knives in straight lines running the length of the trough and the shrimp meats are brought into contact with the knives by rocking the entire trough back and forth so that the shrimp follow a substantially similar herringbone pattern as they descend the trough, striking first one knife then another; at the bottom of the trough the shrimp are washed into contact with an endless belt constructed of the same punched metal material as Laitram's drum, by a system of water jets, developed and patented by Deepsouth, which strike the shrimp meats and wash the veins from most of them. This punched metal belt picks up the shrimp meats and deveins the remainder of them as they are moved to the end of the belt.

The trial court found claims 1 and 3 of the 218 patent to be valid and infringed by the machinery marketed by Deepsouth, under the doctrine of equivalents.[1] However, the court con-

---

1. These claims read as follows:

"1. A shrimp de-veining machine comprising an inclined trough, a water supply to said trough, and knives carried by said trough and being spaced above the trough and being oppositely inclined along a path down the trough, said knives extending partially diagonally of the path in successively opposite directions.

\* \* \* \* \*

"3. A shrimp de-veining machine comprising an inclined trough down which the shrimp are induced to slide, a knife in said trough positioned to be encountered by the shrimp to cut the membrane confining the vein, and a water spray to the trough directed upon the shrimp for sliding shrimp down the trough and for flushing out the vein through the severed membrane."

cluded that claim 1 of this patent was unenforceable as to Deepsouth because of file wrapper estoppel. The remaining claims of 218 were found not to be infringed by Deepsouth's machinery either literally or by their equivalence. With regard to the 927 patent, the court found claim 1 to be valid and infringed,[2] while finding the remaining claims asserted to be infringed were overbroad and indefinite. The court refused to apply the negative doctrine of equivalents to free Deepsouth from liability for infringing 927.

On this appeal Deepsouth challenges the court's findings as to the 218 patent, claiming: (a) a total lack of equivalence, (b) file wrapper estoppel should have been applied to preclude claim 3 in the same manner it was to bar claim 1, (c) claim 3 was anticipated by a prior patent—McKinstry (#2,649,980), (d) claim 3 was fatally broad and indefinite, (e) laches and estoppel prevented any claim of infringement, (f) the court erred in barring Deepsouth from introducing two pieces of documentary evidence which disclosed Laitram's knowledge of Deepsouth's early deveiner machinery activities.

As to infringement of the 927 patent, Deepsouth asserts that claim 1 is invalid (a) for overbreadth and indefiniteness; (b) if not overbroad, because of anticipation by the prior patents of Miller (#2,637,064) and White (#71,434); (c) because of obviousness in view of White, in combination with patents of Macklett (#565,999) or Kell (#1,-028,736); and (d) because the court failed to apply the negative doctrine of equivalents.

In determining whether the trial court was correct in holding that Laitram's patents are valid and describe what Deepsouth's machinery accomplishes, we must consider the doctrines of obviousness, anticipation and equivalence.

■ In determining that Laitram's patents were novel, useful and not obvious, the trial court correctly applied the standard of Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), as it was later stressed in Anderson's-Black Rock, Inc. v. Pavement Salvage Co., Inc., 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969), when it determined the facts which composed the scope and content of prior art and the differences between the prior art and the claims at issue, then made the mixed factual-legal determination that Laitram's improvement was not obvious to one possessing the level of ordinary skill in that art. Swofford v. B & W, Inc., 395 F.2d 362 (5th Cir.1968); Deere & Company v. Hesston Corp., 440 F.2d 904 (5th Cir.1971); cf. Stamicarbon N.V. v. Escambia Chemical Corp., 430 F.2d 920 (5th Cir.1970), and Inject-O-Meter Manufacturing Co., Inc. v. North Plains Fertilizer and Chemical, Inc., 439 F.2d 1138 (5th Cir.1970). See also R. Sherman, Obviousness: A Question of Law or Fact? 51 Journal of the Patent Office Society 547 (1969).

■ Anticipation by prior art structures is largely a question of fact in any case and this is uniquely so in the case at bar. The district court's findings on this facet of the case were made without error in legal principle and are to be tested by the plainly erroneous concept of Fed.R.Civ.P. 52(a). Hughes Tool Co. v. Ingersoll-Rand Co., 437 F.2d 1106 (5th Cir.1971). Sterner Lighting, Inc. v. Allied Electrical Supply, Inc., 431 F.2d 539 (5th Cir.1970).

■ When deciding whether equivalence exists in an allegedly infringing device, Graver Tank & Manufacturing Co. v. Linde Air Products Co. (on reh.)

2. This claim reads thus:
"In a shrimp vein remover, a supporting member, a lip projecting at an acute angle from the supporting member and having a smooth rounded free edge for engaging beneath the vein of a shrimp and for wedging the vein between the lip and the supporting member, and means operatively associated with said supporting member for relatively moving the shrimp with respect to said member to cause separation of the vein from the shrimp meat."

339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950) teaches that a court must not subordinate form to substance. If two devices do the same work in substantially the same way and accomplish substantially the same result, they are the same even though they differ in name, form or shape. What constitutes equivalency is ordinarily to be decided by the trial court against the context of the patent, the prior art and the particular circumstances of the case, giving consideration to the purposes, quality and function of the patented device. Determining whether the Laitram and the Deepsouth machinery were equivalents entails predominantly determinations of fact requiring the balancing of credibility, persuasiveness and weight of evidence; and the trial court's decision here for review was largely based on its findings as to these criteria. Therefore, under the general principles of appellate review which are equally applicable to patent cases, it should not be disturbed unless it is clearly erroneous. Sterner Lighting, Inc. v. Allied Electrical Supply, Inc., *supra*; V & S Ice Machine Company, Inc. v. Eastex Poultry Company, Inc., 437 F.2d 422 (5th Cir.1971); 5 J. Moore, Federal Practice ¶ 52.05[2] at 2697 (2d ed. 1969).

■ Considering the legal standards which are to be applied in such cases, we hold in sum that the trial court acted correctly when it refused to be led into such a technical consideration of the form of the separate elements in Laitram's patents as would submerge the overall substance of what these patents claimed to do and the substantiality of the functions they described. Patent construction is seldom a matter of pure literalism. Merry Manufacturing Company v. Burns Tool Company, 335 F.2d 239 (5th Cir.1964). This is so because a patent is to be construed as a contract, with the intent of the parties as the lodestar. It is the real invention claimed and granted protection which we seek to determine. Del Francia v. Stanthony Corporation, 278 F.2d 745 (9th Cir.1960). A claim may be and fre-quently is given its true meaning by reference to the accompanying specifications and drawings which, while they cannot enlarge it, may give the claim such limitation and definition as is necessary to make its abstract words descriptive of a specific device or process.

To support its claim that the 218 patent was not valid, Deepsouth alluded to a pre-existing patent issued to McKinstry. The McKinstry device was physically presented to this court at oral argument and its operational characteristics were explained. It had to be hand fed by placing one shrimp meat at a time in a precise back down position in the orifice of the machine. This feature, together with the saw and water spray employed to rip out each vein, clearly distinguish it from Laitram's 218 patent, which introduced the shrimp processing industry to volume deveining on a scale never before imagined possible.

Deepsouth suggested obviousness of the 927 patent in the court below on the basis of 48 different patents. That court considered this gaggle of patents singly and in combination with one or more of the others and concluded that they did not render 927 invalid. On appeal the number of claimed prior art disclosures has now been reduced to four. After detailed examination of these devices, we fail to detect any error in the trial court's conclusion that no prior patent disclosed the subject matter of the uncomplicated invention taught by 927. Deepsouth concedes that one of the four patents stressed here, Miller, differs markedly in design from the structure disclosed by 927. It refers to Miller to support its contention that since the isolated words of claim 1 could be applied to describe Miller, this shows that claim 1 of 927 is void for over-claiming invention. But as we have stated, claim 1 cannot be thus singled out of its context for destruction. It must be read in the light of the specifications and accompanying drawings, and when it is, the relevance of Miller evaporates. The White patent, both singular-

ly and in combination with Macklett and Kell, discloses only generally similar machinery designed to perform fish scaling rather than shrimp deveining. We reject the notion that the mechancial problem of engaging and removing a flat resilient scale from the side of a fish is analogous to removing a soft thread-like piece of stringy matter from the body of a shrimp meat. This is no more logical than contending that playing tiddly-winks is akin to threading a needle. The trial court's finding that the 927 patent discloses a new structure, a new mode of operation and new, beneficial and useful results in shrimp deveining, together with his finding that the combination of elements in the 927 patent are so arranged and so cooperate as to function in a manner different from the prior art known in this field and to accomplish more than merely replacing labor, are correct findings supported by competent evidence, and are not shown to be even arguably, let alone clearly erroneous.

 We further agree with the factual conclusion that the real art of the 927 patent—which teaches a method of clearing veins from the backs of slit shrimp meats—is uncomplicated and that the very fact that appellant cited 48 patents covering related or associated processes, not one of which taught this simple invention, indicates as a matter of law that it was not obvious to those then possessed of the ordinary skill of the art in this field.

We decline to be drawn, even as far as the trial court was, into a discussion of the structural dissimilarities between the mechanics of bringing the shrimp meats into contact with identical fingernail-like projections on the *outside* of a punched metal belt jostled by jets of water, rather than *inside* a tumbling drum constructed of the same material, which was half full of flowing water. Not only do such minor changes in structure or form fail to detract from the equivalence of the two operations, they also clearly show that so long as mechanical substance is allowed to con-

trol the mere form of words, the negative doctrine of equivalents does not apply. The essential effectiveness of the fingernail-type material for shrimp vein removal is further demonstrated by the fact that Deepsouth originally tried to make its machinery which performed this function out of a wire mesh material but without success. It is to be noted that failure occurred despite the accompanying use of Deepsouth's own patented jet washer system in the operation of such shrimp deveining machinery.

The key ingredients of commercially successful deveining machinery remain an inclined trough lubricated by water, knives positioned so that they strike and slit the backs of the shrimp meats as they slide down this trough, coupled with a mechanical method whereby the slit shrimp meats are brought into contact with punched metal lips which hook, wedge and pull out the dangling veins. It was Laitram's assignors who discovered that these ingredients would perform this useful function, and the grant of the 218 and 927 patents resulted. We affirm that the district court was correct in holding that the questioned claims of these patents are valid and are not simply brutum flumen licenses to litigate. Further, we hold that the court correctly applied the doctrine of equivalents to find infringement of the 218 patent and correctly declined to apply equivalents in reverse to avoid a holding of infringement on the 927 patent.

 Deepsouth contends that the court erred in failing to invoke the doctrine of file wrapper estoppel as to claim 3 of the 218 patent and places strong reliance upon the fact that the court used that doctrine to hold claim 1 of the 218 patent was not infringed. While we agree with the trial court's legal conclusion that the doctrine of file wrapper estoppel properly applies to all patent office surrenders, not merely to those which are based upon prior art, we conclude that rather than erring in failing to apply the doctrine of file wrapper estoppel to claim 3, the trial court erred in applying that doctrine to claim 1. The

935

facts show that during the course of obtaining its 218 patent, Laitram amended wording in the last sentence of claim 3 from " * * * and a water spray to the trough for flushing out the vein through the severed membrane" to "* * * and a water spray to the trough *directed upon the shrimp for sliding shrimp down the trough and* for flushing out the vein through the severed membrane". The trial court correctly refused to conclude that the addition of these words constituted a surrender which limited claim 3 to a device wherein the water supply was directed solely upon the shrimp. If anything, the addition of the phrase highlighted the function of the water spray for the purpose of aiding gravity to orient the shrimp meats for proper slitting, and certainly the evidence establishes that the discovery of the fact that if shrimp meats were allowed to slide freely down a wet trough they would uniformly orient themselves back side down, was at the heart of the claimed invention. Deepsouth's contention, so strongly emphasizing that the additional function of the water spray was to be directed upon the shrimp, completely overlooks the remainder of the addition "for sliding shrimp down the trough". Laitram was not estopped by this addition to claim 3.

Our disagreement with the invocation of file wrapper estoppel as to claim 1 is briefly stated, since it does not affect the overall outcome of the appeal and is noted only to maintain consistency in our decision. The file in the patent office discloses that during the process of examining the 218 application counsel for the applicant had stressed that the herringbone arrangement of the knives in the 218 trough was a critical feature. The trial court found that this emphasis on the criticality of knife positions estopped Laitram from asserting that Deepsouth's rocking trough was the equivalent of Laitram's inclined knives. However, such a determination really reexaults form over substance. The position of the knives was only important

to the function of 218 in that the knives had to be so positioned and spaced as to hit the back of each shrimp meat with sufficient force to cut it, then send it toward the next knife far enough down the trough to allow the shrimp to again orient its back side down. The letter of counsel was entirely correct that this positioning was critical where the trough was not moved. But just as the trial court was unwilling to allow Deepsouth to rock its trough to zig zag the shrimp from knife to knife and infringe claim 3, we would hold claim 1 equally infringed by Deepsouth under the doctrine of equivalents.

■ The final challenge of the appeal goes to the trial court's refusal to apply laches and estoppel to bar Laitram in enforcing its patent rights. Coupled with the broad assertion of error in applying these equitable doctrines is an objection to the court's refusal to admit two documents into evidence. These documents which passed from Deepsouth to third parties, made specific references to shrimp deveining machinery available for lease or sale, and Deepsouth contends that Laitram had knowledge of the contents of these documents in 1958. The court ruled the documents irrelevant and found that Laitram first acquired knowledge of Deepsouth's deveiner activities in 1962. The court held that the tendered documents showed no more than that Deepsouth was trying to develop a deveining machine or trying to sell such a machine and that the holder of a patent would not be obliged, on the basis of such information, to make an inspection to determine if the machinery was infringing. The admission of such evidence is largely within a trial court's discretion. Patterson v. McWane Cast Iron Pipe Co., 331 F.2d 921 (5th Cir. 1964). We decline to invade the trial court's discretionary province as to the admissibility of this peripheral evidence.

■ Here again, there is really no basis for dispute as to the existence of competent evidence to support the court's specific findings of fact. The disagreement arises because the ultimate

conclusions of fact were made as they were. Based upon findings that Laitram's predecessor knew of a patent issued for a rocking shrimp slitter much like the rocking slitter found to infringe, and knew that such a machine had been put together with Deepsouth's assistance and information in the year 1962, and upon a finding that Laitram first learned of Deepsouth's use of a punched metal fingernail belt in a deveining device in 1965, the court found that Laitram asserted its patent rights within a reasonable period of time. It further found that the time which elapsed after Laitram became aware of Deepsouth's actual devices was not of sufficient length to induce Deepsouth to believe that Laitram had abandoned its patents or considered its patent rights to be worthless. The court found no acquiescence by Laitram in any of Deepsouth's activities. Although the court found that because of prior patent infringement litigation between the parties Laitram ought to have inspected Deepsouth's machines when Deepsouth advised it in mid-October 1964 that it had developed a deveining machine which it was preparing to offer to shrimp canners and processers, the court nevertheless found that Deepsouth could not reasonably have relied upon Laitram's failure to inspect, and that such a failure would not estop Laitram in the present assertion of its patent rights because Deepsouth failed to show any significant investment in plant or equipment relative to manufacture of deveining machinery made as a result of Laitram's conduct.

Deepsouth insists that a serviceman employed by Laitram's predecessor had knowledge of a test run on an experimental rocking slitter in mid-1957. However, the court found that information about this test was never brought to the attention of any responsible person in the company's management until after the present suit was filed. All allegations of laches or estoppel refer only to the shrimp slitter covered by the 218 patent. No issue is raised that Laitram was guilty of inequitable inaction after it got the mid-1965 information concerning infringement of the 927 patent.

Laitram emphasizes that Deepsouth invoiced its first infringing shrimp deveiner March 22, 1965; and the present action was commenced a little over 20 months later. Laitram further charges that Deepsouth did not rely on any failure to act by it, but rather relied upon the urgings of potential customers and opinions of its attorneys that its deveining equipment did not infringe.

In the midst of such equivocal facts and such charges and counter-charges and given the trial court's prerogative and duty to draw conclusions of fact from the evidence and testimony presented to it when it is exercising its broad equitable discretion to enjoin, we see no clearly erroneous fact determination and no abuse of discretion on that court's part in rejecting this equitable defense.

The judgment dated June 30, 1969 is affirmed and the cause is remanded for accounting, damage and cost proceedings in accordance therewith and not inconsistent with this opinion.

Affirmed and remanded.